Filing # 72990321 E-Filed 06/01/2018 11:16:55 PM

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT FOR
HILLSBOROUGH COUNTY, FLORIDA

*CASE # 18-CA-5258*

PATRICIA A. RICHARDSON, MICHAEL
STEPHENS, NORMA STANTON,
SHELBY FELL, SANDRA MORRIS,
ROSLYN BUDZINSKI, MITCHEL BASS,
KATHLEEN CIRILLO, MARGARET
DELAMORE, GERALD CARTER, SANDRA
TRAPNESE, HOWARD E. GLASSCO,
RODGER HENDERSON, LINDA HUTER,
EARL POPLARS, NORMA CAMPBELL-HICKEY,
JOHN DESTEPHANO, JANICE GREENE,
ESTELLE BROWN, and EDWARD CEDERBERG,

            Plaintiffs,

vs.

MERCK & CO., INC., a foreign corporation;
MERCK SHARPE & DOHME CORP., a foreign
corporation; and
McKESSON CORP., a foreign corporation,

            Defendants.
_____/

## COMPLAINT FOR DAMAGES

Plaintiffs, by and through their attorneys, MARC J. BERN & PARTNERS LLP, complain

and allege against Defendants MERCK & CO., INC., (hereinafter, "Merck"), MERCK SHARP &

DOHME, CORP., and McKESSON CORP., and each of them (collectively, "Defendants"), on

information and belief, allege as follows:

### INTRODUCTION

1.    Plaintiffs brings this action for personal injuries and damages suffered as a result

of being inoculated with the ZOSTAVAX® vaccine.

1

2.      The ZOSTAVAX® vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

3.      Plaintiffs were inoculated with the ZOSTAVAX® vaccine for the long-term prevention of shingles. Plaintiff was diagnosed with shingles after being inoculated with the ZOSTAVAX® vaccine and suffered serious physical, emotional, and economic damages as a result of her shingles and associated injuries.

## PARTIES

4.      Plaintiff PATRICIA A. RICHARDSON at all times relevant to this action was and is a resident of the State of Florida, residing at 1626 27th Street, Niceville, Florida 32578. On or about March 1, 2014, PATRICIA A. RICHARDSON was inoculated with the ZOSTAVAX vaccine, administered by Dr. Gwenup White, M.D. at the Wilson Medical Center, located in Niceville, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. PATRICIA A. RICHARDSON subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. Later in July of 2014, PATRICIA A. RICHARDSON was treated by Dr. Gwenup White, M.D. at the Wilson Medical Center, located in Niceville, Florida, Florida for a vesicular outbreak, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff PATRICIA A. RICHARDSON suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff PATRICIA A. RICHARDSON has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

2

5.    Plaintiff MICHAEL STEPHENS at all times relevant to this action was and is a resident of the State of Florida, residing at 1403 Dexter Drive North, Port Orange, Florida 32129. In March of 2014, MICHAEL STEPHENS at was inoculated with the ZOSTAVAX vaccine at the CVS Pharmacy, located in Port Orange, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. MICHAEL STEPHENS at subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about July 1, 2014, MICHAEL STEPHENS was treated by Dr. Jose R. Gierbolini at the Family Care Physicians LLP, located in South Daytona, Florida, for a vesicular outbreak, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff MICHAEL STEPHENS at suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff MICHAEL STEPHENS at has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

6.    Plaintiff NORMA STANTON at all times relevant to this action was and is a resident of the State of Florida, residing at 16918 SE 94 Sunnybrook Circle, The Villages, Florida 32162. In July of 2012, NORMA STANTON was inoculated with the ZOSTAVAX vaccine at the Island Health Care, located in Edgartown, Massachusetts, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. NORMA STANTON subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about July 5, 2016, NORMA STANTON was treated by Dr. Ashraf M. Hassanein, M.D. at the Florida Dermatologic Surgery located in The Villages, Florida, for a vesicular outbreak, which was diagnosed as herpes zoster,

3

or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff NORMA STANTON suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff NORMA STANTON has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

7.    Plaintiff SHELBY FELL at all times relevant to this action was and is a resident of the State of Florida, residing at 11224 Tamarix Avenue, Port Richey, Florida 34668. In 2014, SHELBY FELL was inoculated with the ZOSTAVAX vaccine at the Walgreens Pharmacy, located in Port Richey, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. SHELBY FELL subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about July 21, 2015, SHELBY FELL was treated by Dr. Mahender M. Reddy, M.D., located in Hudson, Florida, for a vesicular outbreak, which was diagnosed as herpes zoster with unspecified nervous complication. SHELBY FELL was prescribed Acyclovir and Hydrocodone for management of her painful symptoms and chronic pain. On or about August 12, 2015, SHELBY FELL sought subsequent treatment from Dr. Mahender M. Reddy, M.D., located in Hudson, Florida, for a vesicular outbreak, which was diagnosed as herpes zoster with unspecified nervous complication and post herpetic neuralgia, a chronic condition of pain and nerve damage secondary to herpes zoster infections. SHELBY FELL was prescribed Gabapentin for management of her painful symptoms and excruciating pain. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff SHELBY FELL suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff SHELBY

4

FELL has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

8.      Plaintiff SANDRA MORRIS at all times relevant to this action was and is a resident of the State of Florida, residing at 117 Coco Plum Drive, Marathon, Florida 33050. On or about July 18, 2011, SANDRA MORRIS was inoculated with the ZOSTAVAX vaccine, administered by Valerie Linzey, NPC, located in Norwalk, Connecticut, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. SANDRA MORRIS subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about July 7, 2016, SANDRA MORRIS was treated by Valerie Linzey, NPC, located in Norwalk, Connecticut, for a burning vesicular outbreak, which was diagnosed as herpes zoster, or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff SANDRA MORRIS suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff SANDRA MORRIS has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

9.      Plaintiff ROSLYN BUDZINSKI at all times relevant to this action was and is a resident of the State of Florida, residing at 2421 Flatwood Street, The Villages, Florida 32162. In 2012, ROSLYN BUDZINSKI was inoculated with the ZOSTAVAX vaccine at River Park Family Medicine, located in South Bend, Indiana, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. ROSLYN BUDZINSKI subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. During 2013, ROSLYN BUDZINSKI was treated at

5

River Park Family Medicine, located in South Bend, Indiana, for a vesicular outbreak, which was diagnosed as shingles and Ramsey Hunt Syndrome, a neurological disorder secondary to zoster infections. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff ROSLYN BUDZINSKI suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff ROSLYN BUDZINSKI has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

10.    Plaintiff MITCHEL BASS at all times relevant to this action was and is a resident of the State of Florida, residing 6413 NW 105 Terrace, Parkland, Florida 33076. In 2009, MITCHEL BASS was inoculated with the ZOSTAVAX vaccine, administered by Dr. Richard A. Levine, M.D. at the Priority Concierge MD, located in Boca Raton, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. MITCHEL BASS subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about September 21, 2014, MITCHEL BASS was treated by Dr. Richard A. Levine, M.D. at the Priority Concierge MD, located in Boca Raton, Florida, for a blistering vesicular rash, which was diagnosed as herpes zoster, or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff MITCHEL BASS suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff MITCHEL BASS has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

11.    Plaintiff KATHLEEN CIRILLO at all times relevant to this action was and is a resident of the State of Florida, residing at 6266 Ashwood Lane, Naples, Florida 34110. On or

6

about December 1, 2014, KATHLEEN CIRILLO was inoculated with the ZOSTAVAX vaccine at the Walmart Pharmacy, located in Naples, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. KATHLEEN CIRILLO subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about October 1, 2015, KATHLEEN CIRILLO was treated by Dr. Elvira Tolentino, located in Naples, Florida, for a blistering vesicular eruption, which was diagnosed as herpes zoster, or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff KATHLEEN CIRILLO suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff KATHLEEN CIRILLO has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

12.    Plaintiff MARGARET DELAMORE at all times relevant to this action was and is a resident of the State of Florida, residing at 1761 Torrington Circle, Longwood, Florida 32750. On or about May 11, 2011, MARGARET DELAMORE was inoculated with the ZOSTAVAX vaccine at the Seminole County Health Department, located in Casselberry, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. MARGARET DELAMORE subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. In July of 2015, MARGARET DELAMORE was treated by Dr. Bill Byrd, M.D., at the Family Physicians of Longwood, located in Longwood, Florida, for a blistering vesicular outbreak, which was diagnosed as herpes zoster, or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff

7

MARGARET DELAMORE suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff MARGARET DELAMORE has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

13.    Plaintiff GERALD CARTER at all times relevant to this action was and is a resident of the State of Florida, residing at 112 McKinley Street, Niceville, Florida 32578. In 2007, GERALD CARTER was inoculated with the ZOSTAVAX vaccine at the Air Force Medical Service located in Eglin, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. GERALD CARTER subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. During 2016, GERALD CARTER was treated at the Air Force Medical Service located in Eglin, Florida, for symptoms of a blistering vesicular outbreak, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff GERALD CARTER suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff GERALD CARTER has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

14.    Plaintiff SANDRA TRAPNESE at all times relevant to this action was and is a resident of the State of Florida, residing at 814 NE 26th Street, Hallandale Beach, Florida 33009. On or about August 3, 2012, SANDRA TRAPNESE was inoculated with the ZOSTAVAX vaccine by Dr. Norman M. Palgon, M.D., located in Hallandale, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent

8

shingles as intended. SANDRA TRAPNESE subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about July 16, 2016, SANDRA TRAPNESE was treated at the Premier Urgent Care, located in Cherry Hill, New Jersey, for a blistering vesicular outbreak, which was diagnosed as herpes zoster, or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff SANDRA TRAPNESE suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff SANDRA TRAPNESE has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

15.    Plaintiff HOWARD E. GLASSCO at all times relevant to this action was and is a resident of the State of Florida, residing at 8356 Journet Boulevard, Port Richey, Florida 34668. On or about January 20, 2016, HOWARD E. GLASSCO was inoculated with the ZOSTAVAX vaccine at the CVS Pharmacy, located in Port Richey, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. HOWARD E. GLASSCO subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about April 21, 2016, HOWARD E. GLASSCO was treated by Dr. Richard Maravel, M.D., located in Port Richey, Florida, for a blistering vesicular outbreak, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff HOWARD E. GLASSCO suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff HOWARD E. GLASSCO has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

9

16.    Plaintiff RODGER HENSERSON at all times relevant to this action was and is a resident of the State of Florida, residing at 112 Dickinson Lane SE, Winter Haven, Florida 33884. On or about November 13, 2014, RODGER HENSERSON was inoculated with the ZOSTAVAX vaccine at the Walgreens Pharmacy, located in Naples, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. RODGER HENSERSON subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. During 2015, RODGER HENSERSON was treated by Dr. Robin Baker, M.D., located in Winter Haven, Florida, for a blistering vesicular outbreak, which was diagnosed as shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff RODGER HENSERSON suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff RODGER HENSERSON has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

17.    Plaintiff LINDA HUTER at all times relevant to this action was and is a resident of the State of Florida, residing at 3113 State Road 580 Lot 295, Safety Harbor, Florida 34695. In 2012, LINDA HUTER was inoculated with the ZOSTAVAX vaccine, administered by Dr. Amy Fong, M.D. at the MPM Primary Care- Oldsmar Family Medicine, located in Oldsmar, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. LINDA HUTER subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about June 30, 2015, LINDA HUTER was treated by the AMA Medical Group, LLP, located in Dunedin, Florida, for a blistering vesicular outbreak, which was diagnosed as shingles. LINDA HUTER has

10

been prescribed Acyclovir, Gabapentin and Medrol for management of her painful symptoms and chronic pain. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff LINDA HUTER suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff LINDA HUTER has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

18.     Plaintiff EARL POPLARS at all times relevant to this action was and is a resident of the State of Florida, residing at 28788 Wild Coffee Court, Bonita Springs, Florida 34135. On or about July 18, 2016, EARL POPLARS was inoculated with the ZOSTAVAX vaccine at the Walgreens Pharmacy, located in Bonita Springs, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. EARL POPLARS subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about July 20, 2016 EARL POPLARS was treated at the Physicians Regional Medical Group, located in Naples, Florida, for a blistering vesicular outbreak, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff EARL POPLARS suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff EARL POPLARS has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

19.     Plaintiff NORMA CAMPBELL-HICKEY at all times relevant to this action was and is a resident of the State of Florida, residing at 350 Regency Square, Vero Beach, Florida 32967. During 2013, NORMA CAMPBELL-HICKEY was inoculated with the ZOSTAVAX

vaccine, administered by Dr. Michele Maholtz, located in Vero Beach, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. NORMA CAMPBELL-HICKEY subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. In 2016, NORMA CAMPBELL-HICKEY was treated by Dr. Neil Heskel, located in Vero Beach, Florida, for a blistering vesicular outbreak, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff NORMA CAMPBELL-HICKEY suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff NORMA CAMPBELL-HICKEY has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

20.     Plaintiff JOHN DESTEFANO at all times relevant to this action was and is a resident of the State of Florida, residing at 11 Century Lane, Palm Coast, Florida 32137. On or about April 1, 2008, JOHN DESTEFANO was inoculated with the ZOSTAVAX vaccine, adminsitered by Dr. Marc LeStaraza, located in Ormond Beach, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. JOHN DESTEFANO subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. During July of 2016, JOHN DESTEFANO was treated at the MediQuick Walk in Clinic, located in Palm Coast, Florida, for a blistering vesicular eruption, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff JOHN DESTEFANO suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff JOHN

12

DESTEFANO has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

21.   Plaintiff JANICE GREENE at all times relevant to this action was and is a resident of the State of Florida, residing at 3040 NW 116th Avenue, Coral Springs, Florida 33065. On or about October 21, 2011, JANICE GREENE was inoculated with the ZOSTAVAX vaccine at Kerry Kuhn LLC, located in, Coral Springs, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. JANICE GREENE subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. On or about November 21, 2012, JANICE GREENE was treated by Danielle Linden, ARNP-BC, located in Parkland, Florida, for a blistering vesicular eruption, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff JANICE GREENE suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff JANICE GREENE has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

22.   Plaintiff ESTELLE BROWN at all times relevant to this action was and is a resident of the State of Florida, residing at 2520 Division Street, Jacksonville, Florida 32209. In 2015, ESTELLE BROWN was inoculated with the ZOSTAVAX vaccine by the Walgreens Pharmacy, located in, Jacksonville, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. ESTELLE BROWN subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. In 2016, ESTELLE BROWN was treated by the St. Vincent's Family Medicine Center, located in Jacksonville, Florida, for a blistering vesicular outbreak, which

was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff ESTELLE BROWN suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff ESTELLE BROWN has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

23.    Plaintiff EDWARD CEDERBERG at all times relevant to this action was and is a resident of the State of Florida, residing at 125 Pritchard Drive, Palm Coast, Florida 32164. During 2012, EDWARD CEDERBERG was inoculated with the ZOSTAVAX vaccine at the Island Doctors of Palm Coast, located in, Palm Coast, Florida, for routine adult health maintenance and the intended purpose for the prevention of shingles. The vaccine did not prevent shingles as intended. EDWARD CEDERBERG subsequently contracted a persistent strain of herpes zoster, the very virus the ZOSTAVAX vaccine is intended to prevent. In 2015, EDWARD CEDERBERG was treated at the Family Medical Care Palm Coast, located in Palm Coast, Florida, which was diagnosed as herpes zoster or shingles. As a direct and proximate result of the ZOSTAVAX vaccine, and/or despite receiving ZOSTAVAX for long-term prevention of shingles, Plaintiff EDWARD CEDERBERG suffered painful injuries and damages, and required extensive medical care and treatment. As a further proximate result, Plaintiff EDWARD CEDERBERG has suffered and will continue to suffer significant medical expenses, and pain and suffering, and other damages.

24.    At all relevant times to this action, as further detailed herein, Defendants were engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce and into

14

the State of Florida, either directly or indirectly through third parties or related entities, the ZOSTAVAX vaccine, which was to be administered to patients throughout the United States, including Florida.

25.     Defendant Merck & Co., Inc. ("Merck"), is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033.

26.     Defendant Merck Sharp & Dohme Corp. ("MSD"), is a New Jersey company that is a wholly-owned subsidiary of Merck and part of the Merck family of companies.  MSD is a corporation organized and existing under the laws of the State of New Jersey with its headquarters located at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033. MSD is foreign corporation registered to conduct business in Florida and can be served via its registered agent CT Corporation System, 1200 S. Pine Island Road, Plantation, Florida 33324

27.     Defendant McKesson Corp. ("McKesson") is a Delaware Corporation with its principal place of business at 2710 Gateway Oaks Boulevard, Sacramento, California, 95833. McKesson is foreign corporation registered to conduct business in Florida and can be served via its registered agent The Prentice Hall Corporation System, Inc., 1201 Hays Street, Suite 105, Tallahassee, Florida 32301.

## JURISDICTION AND VENUE

28.     This is an action for damages in excess of $15,000.00, excluding interest, costs, and attorneys' fees.

29.     This Court has personal jurisdiction over Plaintiffs, each as parties to this action and residents of the State of Florida.

30. This Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193. Defendants caused injury to Plaintiffs within the State of Florida arising out of an act or omission by the Defendants inside this state and outside this state.

31. Each Defendant was engaged in solicitation or service activities within this state.

32. At all relevant times, products, materials, or things processed, distributed, marketed, serviced, or manufactured by each named Defendant anywhere were used or consumed within this State in the ordinary course of commerce, trade, or use.

33. Venue is proper in this Court because venue is deemed proper in the Circuit Court in the county in which cause of action arose, or where any party to the action resides. The actions alleged herein took part in Florida. Further, a substantial amount of the Defendants' conduct, as alleged herein by Plaintiffs, took place throughout the State of Florida, including within Hillsborough County.

34. Requiring Defendants to litigate these claims in Florida does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

35. Moreover, each Defendant systematically availed themselves of the State of Florida by conducting regular and sustained business and engaging in substantial commerce and business activity in Florida, including without limitation researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, and/or introducing into interstate commerce in the State of Florida, either directly or indirectly, its products, including ZOSTAVAX vaccine.

36. Defendants, and each of them, expected or should have expected that their acts would have consequences within the United States, specifically, in the State of Florida; Defendants, each of them, derived and, based on information and belief, some if not all continue

16

to derive substantial revenue from their actions, dealings, associations, relationships, or otherwise, as described herein, in connection with the ZOSTAVAX vaccine.

37.    Each of the above-named Plaintiffs' claims arise from and relate to Defendants' purposeful avail of the State of Florida because resident Defendants' wrongful conduct in researching, developing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, processing, marketing, promoting, distributing, selling, ZOSTAVAX vaccines took place, in whole or in part, in the State of Florida. Therefore, the claims of Plaintiffs relate to and arise from Defendants' explicit contacts and purposeful avail of the State of Florida. Further and independently, McKesson Corporation consented to jurisdiction in the State of Florida by appointing an agent for service of process in this State and by conducting substantial systematic business in this State.

38.    The instant Complaint for Damages does not confer diversity jurisdiction upon the federal courts pursuant to 28 U.S.C. § 1332. Likewise, federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is not invoked by the instant Complaint, as it sets forth herein exclusively state law claims against the Defendants. Nowhere do Plaintiffs plead, expressly or implicitly, any cause of action or request any remedy that arises under or is founded upon federal law, and any alleged federal rights or remedies are expressly disavowed. The issues presented by Plaintiffs do not implicate substantial federal questions, do not turn on the necessary interpretation of federal law, and do not affect the federal system as a whole. The assertion of federal jurisdiction over claims made herein would improperly disturb the congressionally approved balance of federal and state responsibilities.

39.    The National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa-1 et seq. does not preempt Plaintiff from filing this Complaint.

## ALTER-EGO LIABILITY, VICARIOUS AND SUCCESSOR LIABILITY, AND PIERCING THE CORPORATE VEIL AS A RESULT OF THE RELATIONSHIPS BETWEEN MERCK, MSD, AND McKESSON

40.     At all relevant times, Merck, MSD, and McKesson were agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers, and were all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to each other, knowing their collective conduct would foreseeably cause harm to the Plaintiffs.

41.     At all relevant times, Merck, MSD, and McKesson were engaged in the business of, or were successors in interest to, entities in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, and/or advertising for sale, and selling the ZOSTAVAX vaccine for use by Plaintiffs, their health care providers, and pharmacists. As such, each of these Defendants is individually, as well as jointly and severally, liable to Plaintiffs for their damages.

42.     Plaintiffs would not have an adequate remedy if Merck, MSD, and McKesson were not named parties in this action.

43.     A unity of interest in ownership between Merck and MSD exists or existed at all relevant times, such that any individuality and separateness between Merck and MSD has ceased and Merck and MSD are alter-egos of the other. Adherence to the fiction of the separate existence of Merck and MSD as entities distinct from each other will permit an abuse of corporate privilege and would sanction a fraud and/or promote injustice. Sufficient grounds exist to disregard the corporate form and extend liability to MSD and Merck for the other's acts through piercing the corporate veil.

44.    MSD and Merck exercised, and continues to exercise, complete and domination of the finances, policy, and business practices regarding the ZOSTAVAX vaccine of McKesson to such an extent that McKesson has no separate minds, wills or existences of its own.

45.    The aforesaid control was used by Merck and/or MSD to negligently research, design, formulate, compound, test, manufacture, produce, process, assemble, inspect, distribute, market, label, promote, package, prescribe, and/or advertise, and sell ZOSTAVAX vaccine for use by patients like Plaintiffs, and Plaintiffs' health care providers and pharmacists.

46.    McKesson exercised, and continues to exercise, complete control, and/or equal participation in the policy and business practices of Merck and/or MSD regarding the production, promotion, packaging, advertising, distribution, and selling of the ZOSTAVAX vaccine to such an extent that Merck, MSD, and McKesson have no separate mind, will or own existence in this regard.

47.    McKesson used its aforesaid control over Merck and MSD, acting as an agent of Merck, to research, process, assemble, inspect, distribute, market, label, promote, package, advertise, and/or sell the ZOSTAVAX vaccine for use by consumers like Plaintiffs, their health care providers, and their pharmacists.

48.    McKesson, individually and as Merck's agent, developed and implemented the marketing strategy to promote and sell and distribute the ZOSTAVAX vaccine nationwide, including in Florida.

49.    McKesson developed the "Vaccine Information Statement" for the ZOSTAVAX vaccine with Merck, and published and disseminated the ZOSTAVAX "Vaccine Information Statement" nationwide, including in Florida.

50.    Merck and/or MSD impliedly and explicitly consented to have McKesson act on Merck and/or MSD's behalf with regard to the creation, implementation, marketing, distribution, and wide dissemination of the marketing materials for the ZOSTAVAX vaccine and the product itself nationwide, including in Florida.

51.    Merck and MSD manifested McKesson's authority to act on their behalf by allowing McKesson to create, develop, and implement the marketing strategy and campaign for the ZOSTAVAX vaccine.

52.    Merck and MSD manifested McKesson's authority to act on their behalf by allowing McKesson to develop, publish, and disseminate the "Vaccine Information Statement" for the ZOSTAVAX vaccine, and/or to develop, publish, and disseminate marketing and promotional materials for the ZOSTAVAX vaccine.

53.    McKesson, Merck, and MSD are liable for all acts and omissions made by each other because of their alter-ego, business partner, or agency relationship.

54.    "Merck" where used hereinafter, shall refer to all subsidiaries, affiliates, divisions, franchises, partners, joint venturers, organizational units of any kind, predecessors-in-interest including but not limited to Schering-Plough Corporation, successors, assigns, officers, directors, employees, agents and representatives of Merck, MSD, and each of them.

55.    "MSD" where used hereinafter, shall include and refer to all predecessor(s)-in-interest including but not limited to Schering Plough Corporation, successor(s)-in-interest, assigns, officers, directors, employees, agents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and/or representatives of MSD.

56.    "Defendants" where used hereinafter, shall refer to all subsidiaries, affiliates, divisions, franchises, partners, joint venturers, predecessors, successors, assigns, officers, directors, employees, agents and representatives of Merck, MSD, McKesson, collectively.

### ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE

57.    Plaintiffs is within the applicable statute of limitations for their claims because Plaintiffs, and their healthcare professionals, did not discover, and could not reasonably discover, the defects and unreasonably dangerous propensities of the ZOSTAVAX vaccine.

58.    Plaintiffs' ignorance of the defective and unreasonably dangerous nature of the ZOSTAVAX vaccine and the causal connection between these defects and Plaintiffs' injuries and damages, is due in large part to Defendants' acts and omissions in fraudulently concealing information from the public and misrepresenting and/or downplaying the serious threat to public safety its products present.

59.    Defendants' acts and omissions include intentional concealment from Plaintiffs, prescribing healthcare professionals, pharmacists, and the general consuming public and the FDA of material information that the ZOSTAVAX vaccine had not been demonstrated to be safe or effective for its intended purpose.

60.    Defendants are estopped from relying on any statutes of limitation or repose by unclean hands, acts of fraudulent concealment, affirmative misrepresentations and omissions.

### COUNT I:
### NEGLIGENCE

61.    Herpes zoster, or shingles, is caused by the varicella zoster virus (VZV). The incidence and severity of shingles increases as people age.

62.    Shingles results from reactivation of latent varicella zoster virus (VZV), which is the virus that causes chickenpox.

21

63.    The ZOSTAVAX vaccine was designed, developed, marketed, and sold with the intended purpose of long-term prevention of shingles.

64.    At all relevant times, Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the ZOSTAVAX vaccine.

65.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

66.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

67.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

68.    Merck had a duty of reasonable care to consumers of the ZOSTAVAX vaccine, which includes the Plaintiffs, to manufacture to design, manufacture, process, package, label, market, promote, distribute, and sell a product that was safe and effective for its normal, common, and intended purpose.

69.    MSD had a duty of reasonable care to consumers of the ZOSTAVAX vaccine, which includes the Plaintiffs, to manufacture to design, manufacture, process, package, label, market, promote, distribute, and sell a product that was safe and effective for its normal, common, and intended purpose.

70.    McKesson had a duty of reasonable care to consumers of the ZOSTAVAX vaccine, which includes the Plaintiffs, to package, label, market, promote, distribute, and sell a product that was safe and effective for its normal, common, and intended purpose.

22

71.    Merck, MSD, and McKesson each directly advertised or marketed the ZOSTAVAX vaccine to consumers or persons responsible for consumers, and therefore each Defendant had a duty to warn of the risks associated with the use of the product.

72.    Merck, MSD, and McKesson each had a duty of reasonable care to consumers of the ZOSTAVAX vaccine, which includes the Plaintiffs, and the prescribers and/or administrators of the ZOSTAVAX vaccine, including Plaintiffs' physicians and healthcare providers, to disclose or warn about unreasonable dangers in the contemplated use of the product.

73.    Merck, MSD, and McKesson each had a duty of reasonable care to consumers of the ZOSTAVAX vaccine, which includes the Plaintiffs, and the prescribers and/or administrators of the ZOSTAVAX vaccine, including Plaintiffs' physicians and healthcare providers, to disclose or warn about any of the product's inherently dangerous propensities that are not obvious.

74.    Varicella zoster is a virus that causes chickenpox.

75.    Once the varicella zoster virus causes chickenpox, the virus remains inactive (dormant) in the nervous system for many years.

76.    VZV can be reactivated due to factors such as disease, stress, aging, and immune modulation caused by vaccination. The reactivated VZV infection of sensory nerve ganglion and the peripheral nerve and its branches persists latently in dorsal root ganglia. Such reactivation causes inflammation of nerve axons as well as vesicular eruptions on skin of involved dermatome.

77.    When reactivated, varicella zoster replicates in nerve cells and is carried down the nerve fibers to the area of skin served by the ganglion that harbored the dormant virus.

78.    The ZOSTAVAX vaccine is a stronger, more potent version of the Varivax® vaccine, which is a varicella live-attenuated virus vaccine intended to prevent chicken pox in individuals 12 months of age or older.

79.    The ZOSTAVAX vaccine contains live VZV. The virulence of the virus is reduced or "attenuated." Attenuated vaccines are designed to activate the immune system with the decreased risk of actually developing the disease.

80.    The ZOSTAVAX vaccine is developed from a live-attenuated version of the Oka/Merck VZV vaccine strain.

81.    A risk of using a live-attenuated virus vaccine is that it is not weakened enough or "under- attenuated".

82.    Under-attenuated live virus creates an increased risk of developing the disease the vaccine was to prevent.

83.    Under-attenuated live VZV has been shown to reactivate.[1]

84.    Once injected, attenuated live virus vaccines have been shown to recombine into more virulent strains causing disease.

85.    Shingles is a reactivation of the latent VZV, that afflicts in nearly 1 million cases annually in the United States, at an occurrence of three to seven times higher incidence in geriatric patients.

86.    In May of 2006, the U.S. Food and Drug Administration ("FDA") approved the ZOSTAVAX vaccine to be marketed and sold in the United States by Merck.

87.    ZOSTAVAX was initially indicated for the "the prevention of herpes zoster (shingles) in individuals 60 years of age and older when administered as a single-dose."[2]

88.    FDA approval of the ZOSTAVAX vaccine was based in large part on the results of the Shingles Prevention Study ("SPS") supported by Merck and/or MSD.

---

[1] Leggiadro, R. J. (2000). "Varicella Vaccination: Evidence for Frequent Reactivation of the Vaccine Strain in Healthy Children." *The Pediatric Infectious Disease Journal*, 19(11), 1117–1118; Krause, P. R., & Klinman, D. M. (2000). *Nature Medicine*, 6(4), 451–454.

[2] FDA Approval Letter, May 25, 2006.

89.     The results of the SPS were published in the *New England Journal of Medicine* on June 2, 2005. The paper was titled "A Vaccine to Prevent Herpes Zoster and Post-herpetic Neuralgia in Older Adults". *N. Engl. J. Med.* 2005; 352(22):2271-84.

90.     The approval granted by the FDA to allow the selling and marketing of this vaccine came with certain post-marketing commitments that Merck and/or MSD agreed to complete, among other things, to insure the safety of the ZOSTAVAX vaccine. These included the following:

   a.  A randomized, placebo-controlled safety study to assess the rates of serious adverse events in 6,000 people receiving the vaccine as compared to 6,000 who receive a placebo.
   b.  An observational study using a health maintenance organization ("HMO") and 20,000 vaccinated people to address safety issues in the course of clinical practice. This study is specifically to detect "potential safety signals following administration of ZOSTAVAX." This study was to be submitted to the FDA by December 2008.

91.     Since ZOSTAVAX's introduction in 2006, a significant number of various adverse effects, including but not limited to shingles, viral infection resulting in disease of the central nervous system, and death were reported to Merck and MSD during the post-marketing commitments made by Merck and MSD for the FDA approval of ZOSTAVAX in 2006.

92.     Since ZOSTAVAX's introduction in 2006, Vaccine Adverse Event Reports ("VAERS") appeared in significant numbers addressing various adverse effects, including, but not limited to, shingles, viral infection resulting in disease of the central nervous system including but not limited to acute disseminated encephalomyelitis and post-herpetic neuralgia, and death.

93.     Documented adverse reactions to vaccines must be reported to the federal government in a compulsory and mandated database, the Vaccine Adverse Event Reporting System ("VAERS"). As of September 2015, VAERS received 1,111 submissions of serious

25

adverse event reports regarding the ZOSTAVAX vaccine, which included reports of: myalgia; arthralgia; lymphadenopathy; rash; actinic keratosis; severe cutaneous disease; peripheral neuropathy; cellulitis; herpes keratitis resulting in vision loss; facial paralysis; pneumonia; brain inflammation (encephalitis); and death.

94.    Other than post-herpetic neuralgia, shingles can lead to other serious complications, such as scarring, bacterial superinfection, allodynia, cranial and motor neuron palsies, pneumonia, encephalitis, visual impairment, hearing loss, and death.

95.    Despite having knowledge of this information, and that correlation exists between being administered the ZOSTAVAX vaccine and developing a viral infection leading to the development of shingles or varicella-zoster related injuries within a relatively short period of time, Defendants failed to provide this information both to patients and the medical providers prescribing the vaccine.

96.    At all relevant times, the ZOSTAVAX vaccine's patient information sheet, its label, and its prescribing information did not adequately address the risk of viral infection or possible diseases of the nervous system associated with the use of the product.

97.    The ZOSTAVAX vaccine's patient information sheet only addressed the concern that a rash and itching might develop at the injection site.

98.    The ZOSTAVAX vaccine's patient information sheet failed to notify its readers that shingles was a noted occurrence during the product's clinical trials.

99.    When Plaintiffs were inoculated with ZOSTAVAX, the patient information sheet, label, and prescribing information distributed with the ZOSTAVAX vaccine lacked an adequate and conspicuous reference to the potential risk of viral infection.

26

100.    The CDC states that live-virus attenuated vaccines should not be administered within four weeks of each other. Commonly administered live-vaccines include: Measles, Mumps and Rubella vaccine (MMR); Rotavirus vaccine; Vaccina vaccine; and the Influenza Vaccine ("Flumist") are all in the category of potential interactions with the ZOSTAVAX vaccine. Receiving any two of these vaccines too closely together can decrease the efficacy of the zoster vaccine.

101.    The ZOSTAVAX vaccine's patient information sheet, label, and prescribing information does not adequately notify its readers or users of the known risk of interactions between ZOSTAVAX and other common vaccinations, such as the Flumist influenza vaccination.

102.    Reasonably prudent manufacturers, distributors, suppliers, and/or sellers would not have placed the ZOSTAVAX vaccine in the stream of commerce with knowledge of its inherent, hidden, and unreasonably dangerous risks.

103.    Reasonably prudent manufacturers, distributors, suppliers, and/or sellers would not have placed the ZOSTAVAX vaccine in the stream of commerce without adequate warnings or disclosures of its inherent, hidden, and unreasonably dangerous risks.

104.    Merck, MSD, and McKesson failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck and MSD knew, or should have known, that the ZOSTAVAX vaccine carried the serious risk of causing viral infection and was therefore not unreasonably dangerous to its consumers.

105.    Merck, MSD, and McKesson failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and distribution of ZOSTAVAX because Merck, MSD, and McKesson knew, or

27

should have known, that the ZOSTAVAX vaccine was not effective for long-term prevention of shingles in adults over 60 years of age.

106.    Merck, MSD, and McKesson failed to issue to consumers and/or their healthcare providers adequate warnings or disclosures, through labels or other means, regarding the risks of serious bodily injury, including viral infection, resulting from use of the ZOSTAVAX vaccine. Merck, MSD, and McKesson's failure was a breach of their duty of reasonable care.

107.    Merck, MSD, and McKesson failed to issue to consumers and/or their healthcare providers adequate warnings or disclosures, through labels or other means, regarding the actual efficacy of the ZOSTAVAX vaccine and the actual risks and benefits of the product. Merck, MSD, and McKesson's failure was a breach of their duty of reasonable care.

108.    The ZOSTAVAX vaccine, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Merck, MSD, and McKesson was unreasonably and inherently dangerous due the risks associated with its use, was more dangerous than expected by the ordinary consumer, and those dangers were not known or obvious to any other party except Defendants (each of them). Merck, MSD, and McKesson breached their duty of reasonable care by selling the unreasonably dangerous ZOSTAVAX vaccine.

109.    Merck and MSD continued to manufacture, market, and sell the ZOSTAVAX vaccine despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers.

110.    Merck and MSD continued to manufacture, market, and sell the ZOSTAVAX vaccine despite the knowledge that its efficacy waned significantly over time, and was effectively worthless after seven years post-inoculation.

28

111.    McKesson continued to label, package, market, promote, distribute, and sell the ZOSTAVAX vaccine without adequate instructions or warnings despite the knowledge, whether direct or ascertained with reasonable care, that ZOSTAVAX posed a serious risk of bodily harm to consumers.

112.    Merck, MSD, and McKesson breached their duty of reasonable care by continuing to sell the unreasonably dangerous ZOSTAVAX vaccine without adequate disclosures despite having actual or constructive knowledge of its associated risks and lack of efficacy.

113.    Merck, MSD, and McKesson had a continuing duty to warn consumers of the ZOSTAVAX vaccine, including the Plaintiffs, of the dangers associated with the product, and by negligently and/or wantonly failing to adequately warn of the dangers of the use of the product, each Defendant breached its duty.

114.    Plaintiffs each suffered from shingles, with painful and persistent physical injuries and damages, and other serious injuries despite being inoculated with the ZOSTAVAX vaccine.

115.    Plaintiffs each suffered from shingles, with painful and persistent physical injuries and damages, and other serious injuries as a direct and proximate result of being inoculated with the ZOSTAVAX vaccine.

116.    As a direct and proximate result of the breach of care by Merck, MSD, and McKesson, Plaintiffs suffered severe and permanent personal injuries, including significant conscious pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and injury.

117.    As a direct and proximate result of the breach of care by Merck, MSD, and McKesson, Plaintiffs suffered, are suffering, and/or will continue to suffer from mental and emotional distress due to resulting physical limitations and seriousness of their physical conditions.

118.    As a direct and proximate result of the breach of care by Merck, MSD, and McKesson, Plaintiffs incurred and will incur medical expenses and other economic harm.

**COUNT II:**
**STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN**

119.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

120.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine.

121.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

122.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

123.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

124.    At all relevant times, Defendants, each of them, placed the ZOSTAVAX vaccine into the stream of commerce with full knowledge that it would reach consumers such as Plaintiff who would become inoculated with the vaccine.

125.    The ZOSTAVAX vaccine was expected to, and did, reach the intended consumers, handlers, and persons administering the product with no substantial change in the condition in

30

which the product was designed, produced, and manufactured by Merck and MSD and sold, distributed, labeled, and marketed by Merck, MSD, and McKesson.

126.    The ZOSTAVAX vaccine, as designed, produced, and manufactured by Merck and MSD and as sold, distributed, labeled, and marketed by Merck, MSD, and McKesson was defective in design and formulation because when it left the hands of Merck, MSD, and McKesson, the product was unreasonably dangerous.

127.    The ZOSTAVAX vaccine, as designed, produced, and manufactured by Merck and MSD and as sold, distributed, labeled, and marketed by Merck, MSD, and McKesson, was defective in design and formulation, because when it left the hands of Merck, MSD, and McKesson, the product was more dangerous than expected by the ordinary consumer.

128.    The ZOSTAVAX vaccine, as designed, produced, and manufactured by Merck and MSD and as sold, distributed, labeled, and marketed by Merck, MSD, and McKesson, was defective in design and formulation, because when it left the hands of Merck, MSD, and McKesson, the product's inherent dangers were not known or obvious to any other party except Defendants (each of them).

129.    The ZOSTAVAX vaccine, as designed, produced, and manufactured by Merck and MSD and as sold, distributed, labeled, and marketed by Merck, MSD, and McKesson, was defective in design and formulation because when it left the hands of Merck, MSD, and McKesson, the foreseeable risks of harm caused by the product exceeded the claimed benefits of the product.

130.    At all relevant times, Merck, MSD, and McKesson knew and had reason to know that the ZOSTAVAX vaccine was inherently defective and unreasonably dangerous as designed and formulated by Merck and MSD, and when used and administered in the form sold, distributed,

and supplied by Merck, MSD, and McKesson, and in the manner instructed by Merck, MSD, and McKesson to be used and administered to the Plaintiffs and other consumers.

131.    Merck, as a leading designer, manufacturer, marketer, and distributor of pharmaceutical products, knew or should have known of a safer alternative vaccine for shingles prevention, in the form of a non-live or inactivated vaccine strain that carries no change of inducing the condition it was intended to prevent.

132.    MSD, as a leading designer and manufacturer of pharmaceutical products, knew or should have known of a safer alternative vaccine for shingles prevention, in the form of a non-live or inactivated vaccine strain that carries no change of inducing the condition it was intended to prevent.

133.    McKesson as a leading manufacturer, marketer, distributor, and seller of pharmaceutical products, and specifically a leading marketer, distributor of the ZOSTAVAX vaccine, knew or should have known of a safer alternative vaccine for shingles prevention, in the form of a non-live or inactivated vaccine strain that carries no change of inducing the condition it was intended to prevent.

134.    Merck and MSD had knowledge of a non-live vaccine during the time that each Plaintiff learned of and purchased ZOSTAVAX, at the time when each Plaintiff was administered the ZOSTAVAX vaccine. Merck was owner of the patent of a non-live alternative, but let the non-live vaccine patent lapse, and chose rather to continue utilizing the recycled Oka vaccine strain (as already used in Merck's pre-existing "Varivax" vaccine, amplified by fourteen-times in strength for zoster prevention).

135.    Unlike the live-attenuated vaccine, ZOSTAVAX, protein-based vaccine alternatives are safe and effective even in immunocompromised patients. Non-live vaccines carry no risk of reactivation inducing shingles after inoculation.

136.    Unlike ZOSTAVAX, non-live vaccines maintain efficacy, with 88% lower risk to develop shingles after four years than ZOSTAVAX, which diminishes in efficacy steadily with time (to zero after four years).

137.    Merck, MSD, and McKesson knew, or should have known, that the pharmaceutical efficacy and overall safety and benefit of a protein based vaccine is a safer alternative to the ZOSTAVAX vaccine.

138.    The existence of safer alternatives to shingles-preventative care which is widely known to the scientific community has been tested in clinical trials alongside ZOSTAVAX comparing efficacy and shows that such dangers of ZOSTAVAX were known or discoverable, as was a safer and more effective alternative. The risks or alternatives were scientifically discoverable in the context of the state-of-the-art defense.

139.    An alternative design of the ZOSTAVAX vaccine, such as an inactivated, non-live, or protein-based vaccine, would have eliminated the possibility of inducing shingles, and would have prevented the injury suffered by Plaintiffs.

140.    Merck knew or should have known that there were widely-publicized and economically feasible methods to "de-activate" the ZOSTAVAX vaccine strain, for example using heat or gamma-radiation, to eliminate the possibility of re-activating the virus upon being inoculated, as occurred in Plaintiffs.

141.    MSD knew or should have known that there were widely-publicized and economically feasible methods to "de-activate" the ZOSTAVAX vaccine strain, for example using

33

heat or gamma-radiation, to eliminate the possibility of re-activating the virus upon being inoculated, as occurred in Plaintiffs.

142.    McKesson knew or should have known that there were widely-publicized and economically feasible methods to "de-activate" the ZOSTAVAX vaccine strain, for example using heat or gamma-radiation, to eliminate the possibility of re-activating the virus upon being inoculated, as occurred in Plaintiffs.

143.    Patients who received the ZOSTAVAX vaccine do so with the intention to have long-term protection from herpes zoster, although even upon perfect use, the efficacy of the vaccine will decrease significantly after four years (according to the CDC).

144.    The ZOSTAVAX vaccine's instructions, labeling, and packaging did not alert potential ZOSTAVAX vaccine consumers or administrators or prescribers of the product of its decreased efficacy over time.

145.    The instructions and information published by Merck, MSD, and McKesson regarding the ZOSTAVAX vaccine indicate that only one inoculation is recommended. There is no booster vaccine or recommendation to re-vaccine.

146.    It was reasonably foreseeable that consumers of the ZOSTAVAX vaccine, including Plaintiffs, would contract the vaccine-strain of herpes zoster, after being inoculated with the ZOSTAVAX vaccine that was intended to prevent this condition.

147.    Merck knew, or should have known, that consumers, such as the Plaintiffs, would foreseeably suffer injury because of the design and/or manufacture of the ZOSTAVAX vaccine.

148.    MSD knew, or should have known, that consumers, such as the Plaintiffs, would foreseeably suffer injury because of the design and/or manufacture of the ZOSTAVAX vaccine.

34

149.    McKesson knew, or should have known, that consumers, such as Plaintiffs, to whom it marketed and distributed the ZOSTAVAX vaccine, would suffer serious injury because of the design and/or manufacture of the ZOSTAVAX vaccine.

150.    Plaintiffs' physicians and/or healthcare providers used and administered the ZOSTAVAX vaccine for the purpose intended by Merck, MSD, and McKesson, and in a manner normally intended to be used and administered, namely for long-term prevention against shingles.

151.    Plaintiffs could not, by the exercise of reasonable care, discover the defective condition of the ZOSTAVAX vaccine and/or perceive its defective dangers prior to its administration by their physicians and/or healthcare providers.

152.    Plaintiffs were each inoculated with the ZOSTAVAX® vaccine for its purpose.

153.    Plaintiffs, their physicians, and their pharmacists used the ZOSTAVAX vaccine in the manner in which it was intended.

154.    The ZOSTAVAX® vaccine did not serve its intended purpose.

155.    As a direct and proximate result of the ZOSTAVAX vaccine's defective design, Plaintiffs sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

## COUNT III:
## STRICT PRODUCTS LIABILITY: FAILURE TO WARN

156.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

157.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing,

35

manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine.

158.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

159.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

160.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

161.    Merck, as a manufacturer, marketer, and distributor of pharmaceutical products, is held to the level of knowledge of an expert in the field. At all relevant times, Merck had knowledge of the dangerous risks and side effects of the ZOSTAVAX vaccine.  At all relevant times, Merck had knowledge of the dangerous risks and side effects, and of the waning efficacy, of the product.

162.    MSD, as a designer and manufacturer of pharmaceutical products, is held to the level of knowledge of an expert in the field. At all relevant times, MSD had knowledge of the dangerous risks and side effects of the ZOSTAVAX vaccine.  At all relevant times, MSD had knowledge of the dangerous risks and side effects, and of the waning efficacy, of the product.

163.    McKesson, as a leading manufacturer, marketer, and distributer of pharmaceutical products, and specifically a leading marketer and distributor of the ZOSTAVAX vaccine at all relevant times is held to the level of knowledge of an expert in the field. At all relevant times, McKesson had knowledge of the dangerous risks and side effects, and of the waning efficacy, of the product.

36

164.    Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to their respective physicians and/or healthcare providers.

165.    At all relevant times, Defendants, each of them, placed the ZOSTAVAX vaccine into the stream of commerce with full knowledge that it would reach consumers such as Plaintiffs who would become inoculated with the vaccine.

166.    The ZOSTAVAX vaccine was under the exclusive control of Merck, MSD, and McKesson.

167.    The ZOSTAVAX vaccine was defective when it left the possession of Merck, MSD, and McKesson, in that it contained inadequate warnings and instructions to alert the Plaintiffs and/or Plaintiffs' healthcare providers that the ZOSTAVAX vaccine created a risk of serious and dangerous side effects, including but not limited to viral infection resulting in shingles.

168.    The ZOSTAVAX vaccine was defective when it left the possession of Merck, MSD, and McKesson, in that it contained insufficient warnings or disclosure to alert the Plaintiffs and/or Plaintiffs' healthcare providers to the actual efficacy of the product over time.

169.    The ZOSTAVAX vaccine, as designed, produced, and manufactured by Merck and MSD and as sold, distributed, labeled, and marketed by Merck, MSD, and McKesson was defective because when it left the hands of Merck, MSD, and McKesson, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer, and those dangers were not known or obvious to any other party except Defendants (each of them).

170.    The ZOSTAVAX vaccine, as designed, produced, and manufactured by Merck and MSD and as sold, distributed, labeled, and marketed by Merck, MSD, and McKesson, was defective due to inadequate warnings or instructions regarding the inherent, hidden, and unreasonable dangers of the product.

171.    The ZOSTAVAX vaccine was expected to, and did, reach the intended consumers, handlers, and persons coming in contact with the product with no substantial change in the condition in which the product was sold by Merck, MSD, and McKesson.

172.    The risk of inducing shingles was a side-effect that was reasonably foreseeable to Defendants, each of them.

173.    The risk of inducing shingles, the very condition ZOSTAVAX was intended to prevent, was a risk that was not obvious to a consumer of the vaccine, such as Plaintiffs, or a prescriber or administrator of the vaccine following the indications of the label, prescribing instructions, or instructions for use.

174.    When Plaintiffs were each vaccinated with ZOSTAVAX at the doctors' offices and pharmacies, listed *infra*, the ZOSTAVAX vaccine lacked adequate and conspicuous warning that that the live vaccine could re-activate a serious strain of the herpes zoster virus.

175.    The waning efficacy of the ZOSTAVAX vaccine over after inoculation, to effectively zero after four years, is not obvious to a consumer of the vaccine, such as Plaintiffs, or a prescriber or administrator of the vaccine following the indications of the label, prescribing instructions, or instructions for use.

176.    Patients who received the ZOSTAVAX vaccine do so with the intention to have long-term protection from herpes zoster.

177.    Even upon perfect use, the efficacy of the vaccine will decrease significantly after four years. Merck, MSD, and McKesson each knew the rate at which the ZOSTAVAX vaccine's efficacy declined.

178.    The CDC published that the ZOSTAVAX vaccine wanes significantly in efficacy within five years, having almost no remaining preventative effects after seven years. This

38

information is not included on any labeling or packaging literature to alert potential ZOSTAVAX vaccine consumers or administers or prescribers of its decreased efficacy over time.

179.    The instructions and information published and provided by Merck, MSD, and McKesson regarding the ZOSTAVAX vaccine indicate that only one inoculation is recommended. There is no booster vaccine or recommendation to re-vaccinate.

180.    When Plaintiffs were each vaccinated with ZOSTAVAX on the respective dates and at the facilities, named *infra*, the ZOSTAVAX vaccine lacked adequate and conspicuous warning or disclosures that the efficacy rate of the ZOSTAVAX vaccine would be effectively zero after four years.

181.    If the Plaintiffs were equipped with the knowledge of the unreasonably dangerous risks associated with the ZOSTAVAX vaccine, Plaintiffs would not have purchased it and agreed to have it injected into their bodies.

182.    If the Plaintiffs' physicians, pharmacists, or healthcare providers were equipped with the unreasonably dangerous risks associated with the ZOSTAVAX vaccine, they would not have recommended, prescribed, purchased, or administered it to the Plaintiffs.

183.    If the Plaintiffs were equipped with the knowledge of the efficacy of the ZOSTAVAX vaccine over time, including the rate at which its efficacy wanes, Plaintiffs would not have purchased it and agreed to have it injected into their body.

184.    If the Plaintiffs' physicians, pharmacists, or healthcare providers were equipped with the knowledge of the efficacy of the ZOSTAVAX vaccine over time, including the rate at which its efficacy wanes, they would not have recommended, prescribed, purchased, or administered it to the Plaintiffs.

185.    When Plaintiffs were vaccinated with ZOSTAVAX, the ZOSTAVAX vaccine was administered and used as intended.

186.    Upon information and belief, the ZOSTAVAX vaccine as manufactured by Merck and/or MSD, and marketed, distributed, and sold by Merck, MSD, and McKesson, was further defective due to inadequate post-market warnings or instructions.

187.    As a proximate result of the ZOSTAVAX vaccine's defectiveness through inadequate warnings, and the Plaintiffs' use of the defective product, Plaintiffs suffered serious physical injuries including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, diminished quality of life, and incurred medical bills and other expenses, and other losses and damages.

**COUNT IV:**
**BREACH OF EXPRESS WARRANTY**

188.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

189.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine.

190.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

191.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

40

192.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

193.    Merck, through its officers, directors, agents (including distributer McKesson), representatives, and written literature and packaging, and written and media advertisements, expressly warranted that the ZOSTAVAX vaccine was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, viral infection, and was adequately tested and fit for its intended use.

194.    Merck, MSD, and McKesson, through their officers, directors, agents, representatives, and through written literature and packaging, and written and media advertisements, expressly warranted that its ZOSTAVAX vaccine was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, viral infection, and was adequately tested and fit for its intended use.

195.    Merck warrantied that "…the vaccine did not cause or induce herpes zoster."

196.    MSD warrantied that "…the vaccine did not cause or induce herpes zoster."

197.    Additionally, Merck, MSD, and McKesson, each of them, through their officers, directors, agents, representatives, and through written literature and packaging, and written and media advertisements, represented that:

   a.  That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it.
   b.  That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies.
   c.  That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults.

41

    d.  That ZOSTAVAX was a "well-studied vaccine."

    e.  That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

    f.  That ZOSTAVAX would benefit its users "in the ***prevention of long-term nerve pain from shingles*** (post-herpetic neuralgia) ***can be primarily attributed to the vaccine's effect on the prevention of shingles***." (emphasis added).

    g.  That the efficacy of ZOSTAVAX is 51% for everyone.

    h.  That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

    i.  That the immunity provided by ZOSTAVAX was unlimited.

    j.  That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

    k.  That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

    l.  That ZOSTAVAX was safe.

    m.  That ZOSTAVAX was effective.

198.    The ZOSTAVAX vaccine did not conform to the representations made by Merck and MSD because it could and did induce shingles.

199.    The ZOSTAVAX vaccine did not conform to the representations made by Merck, MSD, and McKesson because it caused serious injury, including diseases of the nervous system and/or viral infection, to consumers such as the Plaintiffs, when used in routinely administered dosages.

200.    The ZOSTAVAX vaccine did not conform to the representations made by Merck, MSD, and McKesson because it was not effective for the long-term prevention of shingles – it was not effective at all after four years.

201.    The ZOSTAVAX vaccine did not conform to the representations made by Merck, MSD, and McKesson because its efficacy was not the same for all of its users – its peak efficacy rate of 51% was only in users that are 60 years of age.

42

202.    At the time of making such express warranties, Merck and MSD knew that the ZOSTAVAX vaccine could induce herpes zoster.

203.    At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew and/or should have known that the ZOSTAVAX vaccine did not conform to the express warranties and representations:

204.    At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew that the ZOSTAVAX vaccine was associated with numerous serious side effects, including the possibility of viral infection.

205.    At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew that the ZOSTAVAX vaccine waned in efficacy – to effectively zero – after four years post-inoculation.

206.    At the time of making such express warranties, Merck, MSD, and McKesson, each of them, knew that the ZOSTAVAX vaccine was only 51% effective at its peak, if the user was inoculated at age 60.

207.    Merck, MSD, and McKesson breached each of their express warranties.

208.    Plaintiffs, through Plaintiffs' physicians and/or other healthcare providers, did rely on the express warranties made by Merck, MSD, and McKesson regarding the safety and efficacy of the ZOSTAVAX vaccine in purchasing, administering, and using the product.

209.    Members of the medical community, including physicians and other healthcare professionals, relied upon each Defendants' representations and express warranties in connection with the use recommendation, description, and dispensing of the ZOSTAVAX vaccine.

210.    As a foreseeable, direct, and proximate result of the breach of the express warranties by Merck, MSD, and McKesson, the Plaintiffs contracted herpes zoster, resulting in the Plaintiffs

suffering serious physical injuries including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, diminished quality of life, and incurred medical bills and other expenses, and other losses and damages.

## COUNT V:
## BREACH OF IMPLIED WARRANTY

211.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

212.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine

213.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

214.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

215.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

### Merck

216.    At all times relevant to this action, Merck manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold the ZOSTAVAX vaccine for its intended use for the long-term prevention of shingles.

44

217.    Merck knew of the intended use of the ZOSTAVAX vaccine at the time Merck marketed, sold, and distributed its product for use by the Plaintiffs' physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

218.    Merck impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiffs, their physicians, and their healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

219.    Merck's representations and implied warranties were false, misleading, and inaccurate because the ZOSTAVAX vaccine was not safe or effective for its intended purpose, and was not of merchantable quality.

220.    At the time the ZOSTAVAX vaccine was promoted, marketed, distributed, and/or sold by Merck, Merck knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

221.    Plaintiffs, their physicians, and healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of Merck, as manufacturer, developer, distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

222.    Contrary to Merck's implied warranties, the ZOSTAVAX vaccine as used by the Plaintiffs, was not of merchantable quality and was not safe or fit for its intended use because the

product was unreasonably dangerous as described herein and was not effective for the long-term prevention of shingles.

223. Merck breached its implied warranty because the ZOSTAVAX vaccine was not fit for its intended use and purpose.

224. Merck placed the ZOSTAVAX vaccine into the stream of commerce in its condition, and the product was expected to and did reach the Plaintiffs without substantial change in the condition in which it was manufactured and sold.

225. As a foreseeable, direct and proximate result of Merck's acts and omissions and Plaintiffs' use of the ZOSTAVAX vaccine, Plaintiffs suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for her injuries described herein.

## MSD

226. At all times relevant to this action, MSD manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold the ZOSTAVAX vaccine for the long-term prevention of shingles.

227. MSD knew of the intended use of the ZOSTAVAX vaccine at the time MSD designed, manufactured, marketed, sold, and distributed the ZOSTAVAX vaccine for use by the Plaintiffs, their physicians, and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

228. MSD impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiffs, their physicians, and their healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

46

229.    MSD's representations and implied warranties were false, misleading, and inaccurate because its product was not safe or effective for its intended purpose, and was not of merchantable quality.

230.    At the time the ZOSTAVAX vaccine was promoted, marketed, distributed, and/or sold by MSD, MSD knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

231.    Plaintiffs, their physicians, and healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of MSD, as manufacturer, developer, distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

232.    Contrary to MSD's implied warranties, the ZOSTAVAX vaccine as used by the Plaintiffs, was not of merchantable quality and was not safe or fit for its intended use because the product was unreasonably dangerous as described herein and was not safe or fit for its intended use because the product was unreasonably dangerous as described herein and was not effective for the long-term prevention of shingles.

233.    MSD breached its implied warranty because the ZOSTAVAX vaccine was not fit for its intended use and purpose.

234.    MSD placed the ZOSTAVAX vaccine into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the product was expected to and did reach the Plaintiffs without substantial change in the condition in which it was manufactured and sold.

235.     As a foreseeable, direct and proximate result of MSD's acts and omissions and Plaintiffs' use of the ZOSTAVAX vaccine, Plaintiffs suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for her injuries described herein.

### McKesson

236.     At all times relevant to this action, McKesson, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold its ZOSTAVAX vaccine for its intended use for the long-term prevention of shingles.

237.     McKesson knew of the intended use of the ZOSTAVAX vaccine at the time McKesson marketed, sold, and distributed the ZOSTAVAX vaccine for use by the Plaintiffs' physicians and healthcare providers, and impliedly warranted the product to be of merchantable quality and safe and fit for its intended use.

238.     McKesson impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including the Plaintiffs, their physicians, and healthcare providers, that ZOSTAVAX vaccine was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

239.     McKesson's representations and implied warranties were false, misleading, and inaccurate because the ZOSTAVAX vaccine was not safe or fit for its intended use and was not of merchantable quality.

240.     At the time the ZOSTAVAX vaccine was promoted, marketed, distributed, and/or sold by McKesson, McKesson knew of the use for which it was intended and impliedly warranted its product to be of merchantable quality and safe and fit for such use.

241.     Plaintiffs, their physicians, and healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of McKesson, as marketer,

distributor, and seller of the ZOSTAVAX vaccine, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the product was manufactured and sold.

242.    Contrary to McKesson's implied warranties, the ZOSTAVAX vaccine as used by the Plaintiffs was not safe or fit for its intended use because the product was unreasonably dangerous as described herein and was not effective for the long-term prevention of shingles.

243.    McKesson breached its implied warranty because the ZOSTAVAX vaccine was not fit for its intended use and purpose.

244.    McKesson placed the ZOSTAVAX vaccine into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the product was expected to and did reach the Plaintiffs without substantial change in the condition in which it was manufactured and sold.

245.    As a foreseeable, direct and proximate result of McKesson's acts and omissions and Plaintiffs' use of the ZOSTAVAX vaccine, Plaintiffs suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for her injuries described herein.

## COUNT VI:
## FRAUDULENT MISREPRESENTATION

246.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

247.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing,

promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine

248.   Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

249.   MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

250.   McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

### Merck

251.   Merck represented to the medical community, the FDA, and consumers, including the Plaintiffs and their health care providers, that the ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective for its intended use for the long-term prevention of shingles.

252.   Merck knew or believed at the time it made its representations that its misrepresentations were false regarding the efficacy of ZOSTAVAX and the dangers and risks associated with use of the ZOSTAVAX vaccine as intended.

253.   Merck made its misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of the ZOSTAVAX vaccine, such as Plaintiffs.

254.   Merck's misrepresentations include the following: the efficacy of ZOSTAVAX, particularly that it was effective in preventing shingles and post-herpetic neuralgia to consumers over the age of 59;  longevity of efficacy of the ZOSTAVAX vaccine, specifically the lasting preventative effect of the ZOSTAVAX vaccine against the herpes virus, even after an extended

time period; and the safety of ZOSTAVAX, particularly that the ZOSTAVAX vaccine did *not* induce serious side effects (such as shingles, post-herpetic neuralgia)

255.    Merck's employee Melissa Lore disseminated information available on the labeling of ZOSTAVAX vaccine as it was administered to each Plaintiff. The labeling contained misleading information, such as the efficacy and safety of ZOSTAVAX as a preventative measure for shingles, particularly that it was not known to cause or induce post-herpetic neuralgia, shingles, or other complications suffered by Plaintiffs. McKesson also disseminated this misleading information in its patient information materials, brochures, and marketing materials.

256.    Merck's website includes information about ZOSTAVAX and states that the ZOSTAVAX vaccine prevents the reactivation of the zoster virus and effectively prevent shingles.

257.    David Gutsch, M.D., is currently the Executive Director, Vaccines Regulatory, for Merck and MSD.

258.    In 2005, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs healthcare providers.

259.    In 2006, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers.

260.    In 2007, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and

51

McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers.

261.    In 2008, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers i including Plaintiffs' healthcare providers.

262.    In 2009, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers.

263.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX was effective indefinitely after a single administration during her presentations.

264.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers to represent to physicians that ZOSTAVAX did not cause shingles during his presentations.

265.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers, to

represent to physicians that ZOSTAVAX was safe, effective for the long-term prevention of shingles.

266.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX was effective to treat pain associated with shingles.

267.    Ann Redfield, M.S.N., R.N. formally known as Ann R. Sweet, M.S.N., R.N., upon information and belief, worked in a key capacity on Merck's Clinical Safety and Risk Management Department as part of the "vaccine team" at Merck West Point, located in West Point, Pennsylvania. Ann Redfield acted at all times pertinent hereto within the scope of her employment as proprietor of key safety and prescribing information for the ZOSTAVAX vaccine, at issue.

268.    Ann Redfield, MSN, RN, working with part of the "vaccine team" as part of Merck's Clinical Safety and Risk Management Department, wrote the comment section for Merck's WAES adverse experience reports. Ann Redfield, MSN, RN, also worked as the "process owner" of Merck's Varicella Zoster Vaccine Identification Program. In this capacity, Redfield drafted documents presented to the Merck employees who interacted directly with healthcare providers, who recommend, prescribe, and dispense the ZOSTAVAX vaccine.

269.    Ann Redfield, MSN, RN, gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck, MSD, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' physicians and pharmacists.

270.    Ann Redfield, MSN, RN, excluded or otherwise purposely ignored reports of meningitis caused by vaccine-strain herpes zoster and assisted Merck in communicating this false

information to ZOSTAVAX sales representatives, and then to healthcare providers including Plaintiffs' healthcare providers.

271.    In May 2006, Mark Feinberg, M.D., Ph.D., was the vice president of policy, public health and medical affairs of Merck Vaccines.

272.    In May 2006, Mark Feinberg, M.D., Ph.D., stated that shingles is an "often painful disease in older adults."

273.    Since May 2006, on the date that ZOSTAVAX was approved by the FDA for commercial marketing in the United States, Merck represented the following material information to the public:

      a.  That adult shingles causes pain in almost every instance;

      b.  That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it;

      c.  That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles;

      d.  That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies;

      e.  That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults;

      f.  That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

      g.  That ZOSTAVAX was a "well-studied vaccine."

      h.  That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

      i.  That ZOSTAVAX would benefit its users "in the *prevention of long-term nerve pain from shingles* (post-herpetic neuralgia) *can be primarily attributed to the vaccine's effect on the prevention of shingles*." (emphasis added).

      j.  That the efficacy of ZOSTAVAX is 51% for everyone.

      k.  That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

      l.  That the immunity provided by ZOSTAVAX was unlimited.

      m.  That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

        n.   That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

        o.   That ZOSTAVAX was safe.

        p.   That ZOSTAVAX was effective.

274.    Merck made the aforesaid statements (alleged in paragraph 260) through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

275.    Merck made the aforesaid statements (alleged in paragraph 260) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read in 2006.

276.    Merck made the aforesaid statements (alleged in paragraph 260) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the American Journal of Health-System Pharmacy in 2006. Physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

277.    Merck made the aforesaid statements (alleged in paragraph 260) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the Journal of the American Geriatrics Association in 2007. Physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

278. Merck made the aforesaid statements (alleged in paragraph 260) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the medical journal American Family Physician in 2007. Physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

279. Merck made the aforesaid statements (alleged in paragraph 260) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiff's physicians work, subscribed, received, and read.

280. Merck made the aforesaid statements (alleged in paragraph 260) to the public, including directly to consumers, including Plaintiffs, and the medical community, through the May 26, 2006 video news release for the ZOSTAVAX vaccine.

281. The May 26, 2006 video news release for the ZOSTAVAX vaccine was disseminated through broadcast television, cable television, national newspapers such as the New York Times, Washington Post, USA Today, and other national media outlets.

282. Merck provided the May 26, 2006 video news release for the ZOSTAVAX vaccine electronically via email and fax to broadcast television; cable television; national newspapers including the New York Times; Washington Post; USA Today; to BusinessWire, a press release distributor, which distributed these representations to national media outlets; and other national media outlets.

56

283.   In May 2006, Merck made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.   The broadcast media then disseminated Merck's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community, including Plaintiffs and their healthcare providers.

284.   In June 2006, Merck made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.   The broadcast media then disseminated Merck's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community including Plaintiffs and their healthcare providers.

285.   Merck's   representations   intentionally   concealed   the   following   material information:

      a.   From 2006 until present date, Merck intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

      b.   From 2006 until present date, Merck intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

      c.   From 2006 until present date, Merck intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

      d.   From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, Merck knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

286.   On June 13, 2006, Jill Bradley was Merck's Director of Marketing Communications.

287.   On June 13, 2006, Nancy Chamberlin, Pharm. D., Regulatory Review Officer, APLB, submitted a memorandum to Jill Bradley, Merck's Director of Marketing Communications,

regarding the APLB's label review of ZOSTAVAX and stating APLB's position regarding the ZOSTAVAX label:

> "We disagree with your proposal to omit the warning for vaccination with a live attenuated virus and precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals. Omission of these would make your promotional pieces lacking in appropriate fair balance risk information that needs to be conveyed with every promotional material."

288.    On June 13, 2006, Jill Bradley decided, on behalf of Merck and in the scope of her employment with Merck, to intentionally omit the aforesaid warnings associated with the vaccination of a live attenuated virus for the 2006 ZOSTAVAX label.

289.    On June 13, 2006, when Merck decided to omit information on the 2006 ZOSTAVAX vaccine's label, Jill Bradley knew and/or had reason to know the risks associated with the vaccination of a live attenuated virus was material information that would be relied upon by the medical community, including each Plaintiff's healthcare providers, and by Plaintiffs.

290.    On or about June 13, 2006, Merck knew or had reason to know that the ZOSTAVAX vaccine's label omitted statements about the warnings and precautions of using a live virus vaccine.

291.    On or about June 13, 2006, Merck knew or had reason to know that the ZOSTAVAX vaccine's label omitted a warning regarding vaccination with a live attenuated virus.

292.    From June 13, 2006, Merck intentionally omitted material facts from the ZOSTAVAX label and while marketing and selling the ZOSTAVAX vaccine.

293.    Merck knowingly omitted in the packaging for the ZOSTAVAX vaccine that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases.

294.    From 2006 until 2014, Merck represented to the public, including directly to consumers, including Plaintiffs and their healthcare providers, that ZOSTAVAX did not cause or induce shingles through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

295.    Since 2006, Merck represented to the medical community, to the public, and directly to consumers, including Plaintiffs and healthcare providers, that known adverse effects associated with ZOSTAVAX use were no more serious that a "rash" through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

296.    On November 3, 2009, Dr. Rose Tiernan from the OVRR DVRPA called Merck employee Dr. David Gutsch to notify Merck that the term "rash" was too general to be useful. Merck failed to remedy this inadequate warning.

297.    On October 2008, Dr. M. Levin, acting on behalf of Merck, presented at the Annual ICAAC/IDSA Annual Meeting in Washington, DC, and represented that "protection [from shingles] persists for up to 7 years."

298.    On October 23, 2010, Dr. M. Levin, acting on behalf of Merck, presented at the 48th Annual ICAAC/IDSA 46th Annual Meeting in Washington, DC, and represented that "protection [from shingles] persists for up to 7 years."

299.    On May 18, 2011, Merck represented that "The effect of time since vaccination on VE [vaccine efficacy] (waning effect) is not statistically significant" in a presentation regarding the "Persistence of Zoster Vaccine Efficacy" at the Society of Clinical Trials ("SCT") Annual Meeting in Vancouver, BC Canada.

300.    Medical professionals in academia, government, and private practice attended this SCT Annual Meetings, including medical care providers in the United States.

301.    Merck's representations that "the effect of time since vaccination on [ZOSTAVAX's] vaccine efficacy is not statistically significant" are false.

302.    Merck's representations that ZOSTAVAX's protection from shingles persist are false.

303.    ZOSTAVAX's efficacy four years after vaccination is zero.

304.    ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

305.    ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

306.    Merck knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

307.    The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

308.    From 2006 until 2017, Merck's professional representatives met physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs physicians work.

309.    Merck's professional representatives represented to said physicians that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

310.    From 2006 until 2017, Merck held convention panels that were attended by physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work.

60

311.   During these convention panels, Merck represented that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

312.   ZOSTAVAX vaccine's print advertisements showing graphic photos of a rash associated with shingles represented to their viewers and/or readers that shingles always causes pain in every patient.

313.   Shingles is not always accompanied by pain.

314.   ZOSTAVAX was not approved to treat pain.

315.   Shingles is not always accompanied by painful blisters or blistering rash.

316.   ZOSTAVAX vaccine's print advertisements' representations regarding pain occurrence with shingles were false and misleading.

317.   Viewers and consumers who saw, heard, or read the ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements, including Plaintiff and her healthcare providers, do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is highly effective.

318.   Viewers and consumers who saw, heard, or read the ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements, including Plaintiffs and their healthcare providers, relied upon the advertisements' representation that ZOSTAVAX was effective to prevent shingles and understood that representation to indicate that ZOSTAVAX would prevent shingles indefinitely.

319.   The ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements concealed from their viewers, listeners, and readers, including Plaintiffs and

their healthcare providers, that ZOSTAVAX vaccine can cause the reactivation of the chickenpox virus and cause shingles.

320.   Merck knew that the ZOSTAVAX vaccine's television commercials, radio commercials, and/or print advertisements' representations were false and misleading.

321.   Merck had sole access to material facts concerning the ZOSTAVAX vaccine and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

322.   Merck knew and had reason to know that the ZOSTAVAX vaccine created great risk of causing serious personal injury to the users of the ZOSTAVAX vaccine.

323.   Merck knew and had reason to know that the ZOSTAVAX vaccine was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings that accompanied it.

324.   Merck's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine.

325.   Merck's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.

326.   Merck's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus.

327.   Merck's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine.

328.   Merck intentionally misrepresented facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs to rely upon Merck's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles.

329.    Merck intentionally misrepresented facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs' physicians and healthcare providers to rely upon Merck's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiffs' physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

330.    Merck intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs to rely upon Merck's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

331.    Merck intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs' physicians and healthcare providers to rely upon Merck's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiffs' physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

332.    In 2017, Patrick Bergstedt, head of global marketing for Merck, admitted that Merck decided to promote ZOSTAVAX using "scare tactics" to increase the rate of ZOSTAVAX vaccination in adults and consumers.

333.    At the time Merck made these misrepresentations, and at the times that the Plaintiffs were administered the ZOSTAVAX vaccine, Plaintiffs, Plaintiffs' physicians and/or pharmacists, and the medical community were unaware of the representations' falsehoods, and reasonably believed them to be true.

334.    At the time Merck concealed and intentionally omitted these material facts, and at the times that the Plaintiffs were administered the ZOSTAVAX vaccine, Plaintiffs' physicians

and/or pharmacists, and the medical community were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

335.    Merck knew or believed at the time it made representations about the ZOSTAVAX vaccine that the representations were false.

336.    Merck knew or believed at the time it made false representations about the ZOSTAVAX vaccine that the false representations were material.

337.    Merck knew or believed at the time it intentionally omitted material facts about the ZOSTAVAX vaccine that the facts omitted were material.

338.    Merck knew or believed at the time it concealed material facts about the ZOSTAVAX vaccine that the facts concealed were material.

339.    Merck knew and had reason to know that Plaintiffs, Plaintiffs' physicians and healthcare providers, in recommending, prescribing, purchasing, administering, and/or using the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

340.    Plaintiffs would not have purchased and used the ZOSTAVAX vaccine if Plaintiffs knew the true facts regarding its safety and efficacy.

341.    Plaintiffs' physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

342.    Plaintiffs reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

343.    Because Plaintiffs reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

344.    Plaintiff's physicians reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiffs for the long-term prevention of shingles and pain.

345.    Because Plaintiffs' physicians, reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

346.    Merck's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

347.    Merck's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard for the health and safety of the public, its consumers, and the Plaintiffs.

348.    As a foreseeable, direct, and proximate result of Merck's intentional false representations, omissions, and concealment of material facts, Plaintiffs suffered the serious injuries alleged herein.

349.    As a direct and proximate consequence of Merck's fraudulent misrepresentations, omissions, and concealment of material fact, Plaintiffs sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

## MSD

350.    MSD, by and through its agents and employees and/or its predecessors(s)-in-interest, represented to the medical community, the FDA, and consumers, including the Plaintiffs and Plaintiffs' health care providers, that the ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective for its intended use for the long-term prevention of shingles.

351.    MSD knew or believed at the time it made its representations that its misrepresentations were false and fraudulent regarding the efficacy of ZOSTAVAX and the dangers and risks associated with use of the ZOSTAVAX vaccine as intended.

352.    MSD made its misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of the ZOSTAVAX vaccine, such as Plaintiffs.

353.    MSD's fraudulent misrepresentations include the following: the efficacy of ZOSTAVAX, particularly that it was effective in preventing shingles and post-herpetic neuralgia to consumers over the age of 59; longevity of efficacy of the ZOSTAVAX vaccine, specifically the lasting preventative effect of the ZOSTAVAX vaccine against the herpes virus, even after an extended time period; and the safety of ZOSTAVAX, particularly that the ZOSTAVAX vaccine did *not* induce serious side effects (such as shingles and post-herpetic neuralgia)

354.    MSD disseminated information available on the labeling of ZOSTAVAX, as it was administered to Plaintiffs. The ZOSTAVAX labeling contained misleading information, such as the efficacy and safety of ZOSTAVAX as a preventative measure for shingles, particularly that it was not known to cause or induce post-herpetic neuralgia, shingles, or other complications suffered by Plaintiffs.

355.    David Gutsch, M.D., is currently the Executive Director, Vaccines Regulatory, for Merck and MSD.

356.    In 2005, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers.

357.    In 2006, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers.

358.    In 2007, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including including Plaintiffs' healthcare providers.

359.    In 2008, David Gutsch, M.D., gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers.

360.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX was effective indefinitely after a single administration during her presentations.

361.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX did <u>not</u> cause shingles during his presentations.

362.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX was safe, effective for the long-term prevention of shingles.

363.    David Gutsch, M.D., instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX was effective to treat pain associated with shingles.

364.    Ann Redfield, M.S.N., R.N. formally known as Ann R. Sweet, M.S.N., R.N., upon information and belief, worked in a key capacity on MSD's Clinical Safety and Risk Management Department as part of the "vaccine team" at Merck West Point, located in West Point, Pennsylvania. Ann Redfield acted at all times pertinent hereto within the scope of her employment as proprietor of key safety and prescribing information for the ZOSTAVAX vaccine, at issue.

365.    Ann Redfield, MSN, RN, working with part of the "vaccine team" as part of MSD's Clinical Safety and Risk Management Department, wrote the comment section for Merck's WAES adverse experience reports. Ann Redfield, MSN, RN, also worked as the "process owner" of MSD's Varicella Zoster Vaccine Identification Program. In this capacity, Redfield drafted documents presented to the MSD employees who interacted directly with healthcare providers including Plaintiffs' healthcare providers, who recommend, prescribe, and dispense the ZOSTAVAX vaccine.

366.    Ann Redfield, MSN, RN, gave presentations to Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers.

367.    Ann Redfield, MSN, RN excluded or otherwise purposely ignored reports of meningitis caused by vaccine-strain herpes zoster and assisted MSD in communicating this false information to ZOSTAVAX sales representatives, and then to healthcare providers, including Plaintiffs' healthcare providers.

368.    Since May 2006, on the date that ZOSTAVAX was approved by the FDA for commercial marketing in the United States, MSD represented the following material information to the public:

      a.  That adult shingles causes pain in almost every instance;
      b.  That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it;
      c.  That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles;
      d.  That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies;

69

e.  That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults;

f.  That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

g.  That ZOSTAVAX was a "well-studied vaccine."

h.  That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

i.  That ZOSTAVAX would benefit its users "in the *prevention of long-term nerve pain from shingles* (post-herpetic neuralgia) *can be primarily attributed to the vaccine's effect on the prevention of shingles*." (emphasis added).

j.  That the efficacy of ZOSTAVAX is 51% for everyone.

k.  That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

l.  That the immunity provided by ZOSTAVAX was unlimited.

m.  That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

n.  That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

o.  That ZOSTAVAX was safe.

p.  That ZOSTAVAX was effective.

369.  MSD made the aforesaid statements (alleged in paragraph 355) through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

370.  MSD made the aforesaid statements (alleged in paragraph 355) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiff's healthcare providers including Cedric Davis, MD, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read in 2006.

371.  MSD made the aforesaid statements (alleged in paragraph 355) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the American

Journal of Health-System Pharmacy in 2006. Physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

372.    MSD made the aforesaid statements (alleged in paragraph 355) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the Journal of the American Geriatrics Association in 2007. Physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

373.    MSD made the aforesaid statements (alleged in paragraph 355) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in the medical journal American Family Physician in 2007. Physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read these ZOSTAVAX journal ads.

374.    MSD made the aforesaid statements (alleged in paragraph 355) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read from 2006 until 2017.

375.   MSD made the aforesaid statements (alleged in paragraph 355) to the public, including directly to consumers, and the medical community, including Plaintiffs and their healthcare providers, through the May 26, 2006 video news release for the ZOSTAVAX vaccine.

376.   The May 26, 2006 video news release for the ZOSTAVAX vaccine was disseminated through broadcast television, cable television, national newspapers such as the New York Times, Washington Post, USA Today, and other national media outlets.

377.   MSD provided the May 26, 2006 video news release for the ZOSTAVAX vaccine electronically via email and fax to broadcast television; cable television; national newspapers including the New York Times; Washington Post; USA Today; to BusinessWire, a press release distributor, which distributed these representations to national media outlets; and other national media outlets.

378.   In May 2006, MSD made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.   The broadcast media then disseminated MSD's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community, including Plaintiffs and their healthcare providers.

379.   In June 2006, MSD made its ZOSTAVAX video news release available to broadcast media (including broadcast television, cable television, and other national media outlines) via satellite feed, electronic feed, and videocassette.   The broadcast media then disseminated MSD's ZOSTAVAX video news release to the public, including directly to consumers, and to the medical community., including Plaintiffs and their healthcare providers.

380.   MSD's representations intentionally concealed the following material information:

       a.   From 2006 until present date, MSD intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

    b.  From 2006 until present date, MSD intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

    c.  From 2006 until present date, MSD intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

    d.  From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, MSD knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

381.    On June 13, 2006, Nancy Chamberlin, Pharm. D., Regulatory Review Officer, APLB, submitted a memorandum to Jill Bradley, Merck's Director of Marketing Communications, regarding the APLB's label review of ZOSTAVAX and stating APLB's position regarding Merck's ZOSTAVAX label:

> "We disagree with your proposal to omit the warning for vaccination with a live attenuated virus and precautionary statement regarding the theoretical risk of transmitting the vaccine virus to varicella-susceptible individuals. Omission of these would make your promotional pieces lacking in appropriate fair balance risk information that needs to be conveyed with every promotional material."

382.    MSD knew about Nancy Chamberlin's memorandum and the contents therein.

383.    On June 13, 2006, Jill Bradley decided, on behalf of Merck and MSD and in the scope of her employment with Merck, to intentionally omit the aforesaid warnings associated with the vaccination of a live attenuated virus for the 2006 ZOSTAVAX label.

384.    On June 13, 2006, MSD decided to omit information on the 2006 ZOSTAVAX vaccine's label, MSD knew and/or had reason to know the risks associated with the vaccination of a live attenuated virus was material information that would be relied upon by the medical community, including each Plaintiffs' healthcare providers, and by Plaintiffs.

385.   On or about June 13, 2006, MSD knew or had reason to know that the ZOSTAVAX vaccine's label omitted statements about the warnings and precautions of using a live virus vaccine.

386.   On or about June 13, 2006, MSD knew or had reason to know that the ZOSTAVAX vaccine's label omitted a warning regarding vaccination with a live attenuated virus.

387.   From June 13, 2006, MSD intentionally omitted material facts from the ZOSTAVAX label and while marketing and selling the ZOSTAVAX vaccine.

388.   MSD knowingly omitted in the packaging for the ZOSTAVAX vaccine that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases.

389.   From 2006 until 2014, MSD represented to the public, including directly to consumers, including Plaintiffs and their healthcare providers, that ZOSTAVAX did not cause or induce shingles through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

390.   Since 2006, MSD represented to the medical community, to the public, and directly to consumers including Plaintiffs and their healthcare providers, that known adverse effects associated with ZOSTAVAX use were no more serious that a "rash" through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

391.   On November 3, 2009, Dr. Rose Tiernan from the OVRR DVRPA called Merck employee Dr. David Gutsch to notify Merck and MSD that the term "rash" was too general to be useful. MSD failed to remedy this inadequate warning.

392.   MSD's representations that "the effect of time since vaccination on [ZOSTAVAX's] vaccine efficacy is not statistically significant are false.

393.    MSD's representations that ZOSTAVAX's protection from shingles persists for up to seven years are false.

394.    ZOSTAVAX's efficacy four years after vaccination is zero.

395.    ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

396.    ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

397.    MSD knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

398.    The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

399.    From 2006 until 2017, MSD's professional representatives met physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work.

400.    MSD's professional representatives represented to said physicians that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

401.    From 2006 until 2017, MSD held convention panels that were attended by physicians throughout the United States in person, including Plaintiffs' healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work.

402.    During these convention panels, MSD represented that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over

time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries
or complications associated with herpes zoster.

403.    Since May 2006 and during all relevant times, ZOSTAVAX vaccine's television
commercials, radio commercials, and print advertisements were published and run in magazines
targeting 50-year-old-and-older adults, and in broadcast television, cable television, mainstream
radio, and other broadcast media outlets.

404.    ZOSTAVAX vaccine's television commercials, radio commercials, and print
advertisements represented to their viewers, hearers, and/or readers, including Plaintiffs and their
healthcare providers, that shingles always causes pain in every patient.

405.    Shingles is not always accompanied by pain.

406.    ZOSTAVAX was not approved to treat pain.

407.    Shingles is not always accompanied by painful blisters or blistering rash.

408.    ZOSTAVAX vaccine's television commercials, radio commercials, and print
advertisements' representations regarding pain occurrence with shingles were false and
misleading.

409.    Viewers and consumers, including Plaintiffs and their healthcare providers, who
saw or read the ZOSTAVAX vaccine's television commercials, radio commercials, and print
advertisements do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is highly
effective.

410.    Viewers and consumers, including Plaintiffs and their healthcare providers, who
saw or read ZOSTAVAX vaccine's television commercials, radio commercials, and print
advertisements relied upon the advertisements' representation that ZOSTAVAX was effective to

prevent shingles and understood that representation to indicate that ZOSTAVAX would prevent shingles indefinitely.

411.    The ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements concealed from their viewers and readers, including Plaintiffs and their healthcare providers, that ZOSTAVAX vaccine can cause the reactivation of the chickenpox virus and cause shingles.

412.    MSD knew that the ZOSTAVAX vaccine's television commercials, radio commercials, and print advertisements' representations were false and misleading.

413.    MSD is liable for the false representations made in the television commercials, radio commercials, and print advertisements between it is Merck's agent and Merck is its agent.

414.    MSD is liable for the false representations made in the television commercials, radio commercials, and print advertisements between no corporate distinction exists between MSD and Merck.

415.    MSD had the duty to disclose to the Plaintiffs and Plaintiffs' physicians and healthcare providers of the defective design and formulation of the ZOSTAVAX vaccine, which heightened the risk of suffering the injuries, diseases, and maladies that Plaintiffs suffered as a result as alleged.

416.    MSD was also under a duty to disclose to Plaintiffs and Plaintiffs' healthcare providers of the defective or ineffective nature of the ZOSTAVAX vaccine that it manufactured, marketed, distributed, and sold to them.

417.    MSD had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

418.   MSD knew and had reason to know that the ZOSTAVAX vaccine created great risk of causing serious personal injury to the users of the ZOSTAVAX vaccine.

419.   MSD knew and had reason to know that the ZOSTAVAX vaccine was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings that accompanied it.

420.   MSD's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine.

421.   MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.

422.   MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus.

423.   MSD's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine.

424.   MSD intentionally misrepresented facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiffs, Plaintiffs' physicians, consumers, and the public.

425.   MSD omitted material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiffs, Plaintiffs' physicians, consumers, and the public

426.   MSD concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiffs, Plaintiffs' physicians, consumers, and the public

427.   MSD intentionally misrepresented material facts concerning the safety of the ZOSTAVAX vaccine to induce Plaintiffs to rely upon MSD's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles.

428.    MSD intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs' physicians and healthcare providers to rely upon MSD's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiffs' physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

429.    At the time MSD made these misrepresentations, and at the times that the Plaintiffs was administered the ZOSTAVAX vaccine, Plaintiffs and Plaintiffs' physicians and/or pharmacists were unaware of the representations' falsehoods, and reasonably believed them to be true.

430.    MSD intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs to rely upon MSD's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

431.    MSD intentionally omitted and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs' physicians and healthcare providers to rely upon MSD's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiffs' physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

432.    At the time MSD concealed and/or intentionally omitted material facts regarding the safety and efficacy of the ZOSTAVAX vaccine, and at the time that the Plaintiffs was administered the ZOSTAVAX vaccine, Plaintiffs, Plaintiffs' physicians and pharmacists, and the medical community were unaware of the material facts regarding the true safety and efficacy of

ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

433.    MSD knew or believed at the time it made representations about the ZOSTAVAX vaccine that the representations were false.

434.    MSD knew or believed at the time it made false representations about the ZOSTAVAX vaccine that the false representations were material.

435.    MSD knew or believed at the time it intentionally omitted material facts about the ZOSTAVAX vaccine that the facts omitted were material.

436.    MSD knew or believed at the time it concealed material facts about the ZOSTAVAX vaccine that the facts concealed were material.

437.    MSD's fraudulent misrepresentations were made with the intent of defrauding and deceiving the public, consumers, the medical community, the Plaintiffs, and Plaintiffs' healthcare providers and also inducing the medical community, Plaintiffs, Plaintiffs' healthcare providers and the public, to recommend, prescribe, dispense, and purchase the ZOSTAVAX vaccine.

438.    MSD knew and had reason to know that Plaintiffs, Plaintiffs physicians and healthcare providers, in recommending, prescribing, purchasing, administering, and/or using the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

439.    Plaintiffs would not have purchased and used the ZOSTAVAX vaccine if Plaintiffs knew the true facts regarding its safety and efficacy.

440.    Plaintiffs' physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

441.   Plaintiffs reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

442.   Because Plaintiffs reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

443.   Plaintiffs' physicians reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiffs for the long-term prevention of shingles and pain.

444.   Because Plaintiffs' physicians reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

445.   MSD's false representations regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

446.   MSD's false representations regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard for the health and safety of the public, its consumers, and the Plaintiffs.

447.   MSD's intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

81

448.    MSD's intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard and depraved indifference for the health and safety of the public, its consumers, and the Plaintiffs.

449.    As a foreseeable, direct, and proximate result of MSD's intentional false representations, concealment, and omissions of material, Plaintiffs suffered the serious injuries alleged herein.

450.    As a direct and proximate consequence of MSD's fraudulent misrepresentations, omissions, and concealment of material fact, Plaintiffs sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

### McKesson

451.    McKesson represented to the medical community, the FDA, and consumers, including the Plaintiffs and Plaintiffs' health care providers, that the ZOSTAVAX vaccine had been adequately tested in clinical trials and was found to be safe and effective.

452.    McKesson knew or believed at the time it made its misrepresentations, that its misrepresentations were false and fraudulent regarding the dangers and risks associated with use of the ZOSTAVAX vaccine as intended.

453.    McKesson made its misrepresentations intentionally, willfully, wantonly, and with reckless disregarded and depraved indifference for the safety and well-being of the users of the ZOSTAVAX vaccine, including Plaintiffs.

454.    McKesson's fraudulent misrepresentations include the following: the efficacy of ZOSTAVAX, particularly that it was effective in preventing shingles and post-herpetic neuralgia

to consumers over the age of 59; longevity of efficacy of the ZOSTAVAX vaccine, specifically the lasting preventative effect of the ZOSTAVAX vaccine against the herpes virus, even after an extended time period; and the safety of ZOSTAVAX, particularly that the ZOSTAVAX vaccine did *not* induce serious side effects (such as shingles and post-herpetic neuralgia)

455.    McKesson designed, created, and disseminated information available on the labeling of ZOSTAVAX vaccine as it was administered to Plaintiffs.

456.    The ZOSTAVAX labeling contained misleading information, such as the efficacy and safety of ZOSTAVAX as a preventative measure for shingles, particularly that it was not known to cause or induce post-herpetic neuralgia, shingles, or other complications suffered by Plaintiffs.

457.    McKesson also disseminated this misleading information in its patient information materials, brochures, and marketing materials.

458.    McKesson's website includes information that the ZOSTAVAX vaccine prevents the reactivation of the zoster virus, to effectively prevent shingles.

459.    McKesson created, developed, designed, and implemented the marketing and sales strategy for ZOSTAVAX.

460.    McKesson gave presentations to persons that were directly involved with in-person marketing and sales of ZOSTAVAX to physicians and/or hospitals, including Plaintiffs' healthcare providers.

461.    McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers, to

represent to physicians that ZOSTAVAX was effective indefinitely after a single administration during these presentations.

462.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers, to represent to physicians that ZOSTAVAX did <u>not</u> cause shingles during these presentations.

463.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers to represent to physicians that ZOSTAVAX was safe, effective for the long-term prevention of shingles.

464.     McKesson instructed Merck's, MSD's, and McKesson's field personnel, which was the sales force of Merck employees, MSD employees, and McKesson employees who interacted directly with healthcare providers, including Plaintiffs' healthcare providers to represent to physicians that ZOSTAVAX was effective to treat pain associated with shingles.

465.     Since May 2006, when ZOSTAVAX was approved by the FDA for commercial marketing in the United States, McKesson represented the following material information to the public:

        a.  That adult shingles causes pain in almost every instance;

        b.  That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it;

        c.  That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles;

        d.  That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies;

        e.  That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults;

    f.  That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

    g.  That ZOSTAVAX was a "well-studied vaccine."

    h.  That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

    i.  That ZOSTAVAX would benefit its users "in the ***prevention of long-term nerve pain from shingles*** (post-herpetic neuralgia) ***can be primarily attributed to the vaccine's effect on the prevention of shingles***." (emphasis added).

    j.  That the efficacy of ZOSTAVAX is 51% for everyone.

    k.  That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

    l.  That the immunity provided by ZOSTAVAX was unlimited.

    m. That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

    n.  That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

    o.  That ZOSTAVAX was safe.

    p.  That ZOSTAVAX was effective.

466.    McKesson made the aforesaid statements (alleged in paragraph 452) through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

467.    McKesson made the aforesaid statements (alleged in paragraph 452) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read in 2006.

468.    McKesson made the aforesaid statements (alleged in paragraph 452) to physicians and the medical community in ZOSTAVAX "Physician Journal Ad[s]" published in medical journals that physicians throughout the United States in person, including Plaintiffs' healthcare

providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work, subscribed, received, and read from 2006 until 2017.

469.    McKesson made he aforesaid statements (alleged in paragraph 452) in Community Health Care brochures that it designed, created, published, and disseminated to the public and specifically targeted for the care of adults over the age of 60.

470.    McKesson made he aforesaid statements (alleged in paragraph 452) in each State's Department of Health's Immunization Policies and Procedures that it designed, created, published, and disseminated to the public including Plaintiffs and their healthcare providers, by and through each state government's health department, including Florida.

471.    McKesson's representations intentionally concealed the following material information:

    a.  From 2006 until present date, McKesson intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

    b.  From 2006 until present date, McKesson intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

    c.  From 2006 until present date, McKesson intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

    d.  From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, McKesson knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

472.    On June 13, 2006, when McKesson decided to omit information on the 2006 ZOSTAVAX vaccine's label, McKesson knew and/or had reason to know the risks associated with the vaccination of a live attenuated virus was material information that would be relied upon by the medical community, including Plaintiffs' healthcare providers, and by Plaintiffs.

473.   On or about June 13, 2006, McKesson knew or had reason to know that the ZOSTAVAX vaccine's label omitted statements about the warnings and precautions of using a live virus vaccine.

474.   On or about June 13, 2006, McKesson knew or had reason to know that the ZOSTAVAX vaccine's label omitted a warning regarding vaccination with a live attenuated virus.

475.   From June 13, 2006, McKesson intentionally omitted material facts from the ZOSTAVAX label and while marketing and selling the ZOSTAVAX vaccine.

476.   McKesson knowingly omitted in the packaging for the ZOSTAVAX vaccine that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases.

477.   From 2006 until 2014, McKesson represented to the public, including directly to consumers, including Plaintiffs and their healthcare providers, that ZOSTAVAX did not cause or induce shingles through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

478.   Since 2006, McKesson represented to the medical community, to the public, and directly to consumers including Plaintiffs and their healthcare providers, that known adverse effects associated with ZOSTAVAX use were no more serious that a "rash" through the ZOSTAVAX vaccine's labeling, advertising, marketing material, advertisements, and/or packaging.

479.   McKesson represented that the effect of time since vaccination on ZOSTAVAX's vaccine efficacy is not statistically significant.

480.   McKesson represented that ZOSTAVAX protected its users for shingles indefinitely.

481.    McKesson's representation that the effect of time since vaccination on ZOSTAVAX's vaccine efficacy is not statistically significant is false.

482.    McKesson's representations that ZOSTAVAX protected its users for shingles indefinitely were false.

483.    ZOSTAVAX's efficacy four years after vaccination is zero.

484.    ZOSTAVAX's efficacy four years after vaccination is statistically the same as zero.

485.    ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

486.    McKesson knew that ZOSTAVAX's efficacy rate wanes to near zero after four years after vaccination.

487.    The ZOSTAVAX vaccine can cause the chickenpox virus to reactivate and cause shingles upon its administration.

488.    From 2006 until 2017, McKesson's professional representatives met physicians throughout the United States in person, including Plaintiffs' healthcare providers, and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work.

489.    McKesson's professional representatives represented to said physicians that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

490.    From 2006 until 2017, McKesson held convention panels that were attended by physicians throughout the United States in person, including Plaintiffs' healthcare providers and the administrators and senior level physicians at the medical facilities where Plaintiffs' physicians work.

88

491.   During these convention panels, McKesson represented that ZOSTAVAX was effective for the long-term prevention of shingles; that ZOSTAVAX's efficacy rate did not decrease over time after vaccination; and that ZOSTAVAX created no risk of causing shingles or other injuries or complications associated with herpes zoster.

492.   McKesson had the duty to disclose to the Plaintiffs and Plaintiffs' physicians and healthcare providers of the defective design and formulation of the ZOSTAVAX vaccine, which heightened the risk of suffering the injuries, diseases, and maladies that Plaintiffs suffered as a result as alleged.

493.   McKesson was also under a duty to disclose to Plaintiffs and Plaintiffs' healthcare providers of the defective or ineffective nature of the ZOSTAVAX vaccine that it marketed, distributed, and sold to them.

494.   McKesson had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

495.   McKesson, with Merck and MSD, had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

496.   McKesson knew and had reason to know that the ZOSTAVAX vaccine created great risk of causing serious personal injury to the users of the ZOSTAVAX vaccine.

497.   McKesson knew and had reason to know that the ZOSTAVAX vaccine was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings that accompanied it.

498.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true safety of the ZOSTAVAX vaccine.

499.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.  McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true risks of the ZOSTAVAX vaccine.

500.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true risks of it causing shingles and other injuries and conditions associated with the herpes zoster virus. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing that it carried a real and serious risk of causing shingles and other injuries and conditions associated with the herpes zoster virus.

501.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed the true efficacy of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true efficacy of the ZOSTAVAX vaccine.

502.    McKesson intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiffs, Plaintiffs' physicians, consumers, and the public.

503.    McKesson omitted material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiffs, Plaintiffs' physicians, consumers, and the public.

504.    McKesson concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine with the intent to mislead Plaintiffs, Plaintiffs' physicians, consumers, and the public.

505.    McKesson intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs to rely upon McKesson's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles.

506.    McKesson intentionally misrepresented material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs' physicians and healthcare providers to rely upon McKesson's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiffs' physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

507.    McKesson intentionally omitted and/or concealed facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs to rely upon McKesson's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

508.    McKesson intentionally omitted and/or concealed facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce consumers, including Plaintiffs and her healthcare providers to rely upon McKesson's misrepresentations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles, and to purchase and use the ZOSTAVAX vaccine as a result.

509.    McKesson intentionally omitted and/or concealed facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce Plaintiffs' physicians and healthcare providers to

rely upon McKesson's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that Plaintiffs' physicians and healthcare providers would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

510.   McKesson intentionally omitted and/or concealed facts concerning the safety of the ZOSTAVAX vaccine to induce the medical community including Plaintiffs' healthcare providers, to rely upon McKesson's representations that the ZOSTAVAX vaccine was a safe vaccine for the long-term prevention of shingles so that the medical community, including Plaintiffs healthcare providers, would purchase, prescribe, administer and/or dispense the ZOSTAVAX vaccine.

511.   At the time McKesson made these misrepresentations, and at the times that the Plaintiffs were administered the ZOSTAVAX vaccine, Plaintiffs were unaware of the representations' falsehoods, and reasonably believed them to be true.

512.   At the time McKesson intentionally omitted material facts, and at the times that the Plaintiffs were administered the ZOSTAVAX vaccine, Plaintiffs were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

513.   At the time McKesson made these misrepresentations, and at the times that the Plaintiffs were administered the ZOSTAVAX vaccine, Plaintiffs' physicians and/or pharmacists were unaware of the representations' falsehoods, and reasonably believed them to be true.

514.   At the time McKesson intentionally omitted and concealed material facts, and at the times that the Plaintiffs was administered the ZOSTAVAX vaccine, Plaintiffs' physicians and/or pharmacists were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

515.    McKesson knew or believed at the time it made representations about the ZOSTAVAX vaccine that the representations were false.

516.    McKesson knew or believed at the time it made false representations about the ZOSTAVAX vaccine that the false representations were material.

517.    McKesson knew or believed at the time it intentionally omitted material facts about the ZOSTAVAX vaccine that the facts omitted were material.

518.    McKesson knew or believed at the time it concealed material facts about the ZOSTAVAX vaccine that the facts concealed were material.

519.    McKesson's fraudulent misrepresentations were made with the intent of defrauding and deceiving the public, consumers, the medical community, including Plaintiffs' healthcare providers, the Plaintiffs, and also inducing the medical community, including Plaintiffs' healthcare providers, Plaintiffs, and the public, to recommend, prescribe, dispense, and purchase the ZOSTAVAX vaccine.

520.    McKesson knew and had reason to know that Plaintiffs, Plaintiffs' physicians and healthcare providers, in recommending, prescribing, purchasing, administering, and/or using the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

521.    Plaintiffs would not have purchased and used the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

522.    Plaintiffs' physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

93

523.    Plaintiffs reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

524.    Because Plaintiffs reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

525.    Plaintiffs' physicians reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiffs for the long-term prevention of shingles and pain.

526.    Because Plaintiffs' physicians reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

527.    McKesson's false representations regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

528.    McKesson's false representations regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard for the health and safety of the public, its consumers, and the Plaintiffs.

529.    McKesson's intentional omissions of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

94

530.   McKesson's intentional omissions of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard and depraved indifference for the health and safety of the public, its consumers, and the Plaintiffs.

531.   McKesson's intentional concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, fraud, and deceit.

532.   McKesson's intentional concealment of material facts regarding the safety and efficacy of ZOSTAVAX were made and perpetrated willfully, wantonly, purposefully, and with reckless disregard and depraved indifference for the health and safety of the public, its consumers, and the Plaintiffs.

533.   McKesson's intentional misrepresentations concerning the safety of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

534.   McKesson's intentional misrepresentations concerning the efficacy of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

535.   McKesson's intentional concealment and omissions of material facts concerning the safety of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

536.   McKesson's intentional concealment and omissions of material facts concerning the efficacy of the ZOSTAVAX vaccine were purposeful, willful, wanton, and fraudulent.

537.   As a direct and proximate consequence of McKesson's fraudulent misrepresentations and concealment, Plaintiffs were caused to suffer the serious and dangerous side effects, including painful and persistent outbreaks of the herpes zoster virus, the very condition the vaccine was intended to prevent. Plaintiffs sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the

enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

## COUNT VII:
## NEGLIGENT MISREPRESENTATION

538.    The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

539.    At all relevant times, as set forth, Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX vaccine

540.    Merck designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

541.    MSD designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

542.    McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

543.    Merck, MSD, and McKesson had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiffs, the truth regarding Merck's, claims that the ZOSTAVAX vaccine had been tested, and found to be safe and effective for its stated purpose (the long-term prevention of shingles and post-herpetic neuralgia).

## Merck

544.     Merck had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiffs, the truth regarding its claims that Merck's product had been tested, and found to be safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

545.     Merck represented and marketed ZOSTAVAX as being safe and effective.

546.     Merck was aware of the risks of ZOSTAVAX. However, Merck failed to communicate to the Plaintiffs, Plaintiffs' healthcare providers, consumers, and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

547.     Merck failed to exercise ordinary care in making representations concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce. Merck negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

548.     Merck breached its duty in representing to the Plaintiffs, Plaintiffs' physicians and healthcare providers, and the medical community that Merck's product did not carry the risk of serious side effects such as those suffered by Plaintiffs and other similarly situated patients.

549.     Merck failed to warn the Plaintiffs and other consumers, of the defective condition of ZOSTAVAX, as manufactured and/or supplied by Merck.

550.     The misrepresentations made by Merck, in fact, were false.

551.     Merck was careless or negligent by failing to ascertain the truth of its representations at the time it made them.

552.    Merck negligently misrepresented material facts about ZOSTAVAX: it in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

553.    Alternatively, Merck made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

554.    The above misrepresentations were made to Plaintiffs, Plaintiffs' physicians and/or pharmacists, the medical community, as well as the general public.

555.    Plaintiffs and Plaintiffs' healthcare providers, pharmacists and physicians, justifiably relied on Merck's misrepresentations.

556.    Consequently, Plaintiffs' use of ZOSTAVAX was to Plaintiffs' own detriment as Merck's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

557.    As a foreseeable, direct, and proximate result of Merck's negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, Merck knew, or had reason to know, that Merck's product had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

558.    As a direct and proximate consequence of Merck's negligent misrepresentations, the Plaintiffs sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

98

**MSD**

559.   MSD had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiffs, the truth regarding its claims that MSD's product had been tested, and found to be safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

560.   MSD represented and marketed ZOSTAVAX as being safe and effective.  MSD was aware of the risks of ZOSTAVAX.  However, MSD failed to communicate to the Plaintiffs and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

561.   MSD failed to communicate to the Plaintiffs and other members of the general public, that the administration of the ZOSTAVAX vaccine would not remain effective past four years.

562.   MSD failed to exercise ordinary care in making representations concerning its product and its manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce.

563.   MSD negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

564.   MSD breached its duty in representing to the Plaintiffs, Plaintiffs' physicians and healthcare providers, and the medical community that the ZOSTAVAX vaccine did not carry the risk of serious side effects such as those suffered by Plaintiffs and other similarly situated patients.

565.   MSD failed to warn the Plaintiffs and other consumers, of the defective condition of ZOSTAVAX, as manufactured and/or supplied by MSD.

99

566.    The misrepresentations made by MSD, in fact, were false.

567.    MSD was careless or negligent by failing to ascertain the truth of its
representations at the time it made them.

568.    MSD negligently misrepresented material facts about ZOSTAVAX: it in that it
made such misrepresentations when it knew or reasonably should have known of the falsity of
such misrepresentations.

569.    Alternatively, MSD made such misrepresentations without exercising reasonable
care to ascertain the accuracy of these representations.

570.    The above misrepresentations were made to Plaintiffs, Plaintiffs' physicians and/or
pharmacists, the medical community, as well as the general public at the time Plaintiffs were each
prescribed ZOSTAVAX.

571.    Plaintiffs and Plaintiffs' healthcare providers, pharmacists and physicians,
justifiably relied on MSD's misrepresentations.

572.    Consequently, Plaintiffs' use of ZOSTAVAX was to Plaintiffs' own detriment as
MSD's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

573.    As a foreseeable, direct, and proximate result of MSD's negligent and/or willful,
intentional, and knowing misrepresentations as set forth herein, MSD knew, or had reason to know,
that the ZOSTAVAX vaccine had not been sufficiently tested, that the product lacked adequate,
accurate, and prominent warnings, and that injection with the product created a high risk of adverse
health effects, and higher than acceptable risks of harm to users, and higher than reported and
represented risks of adverse side effects such as those specifically described herein.

574.    As a direct and proximate consequence of MSD's negligent misrepresentations, the
Plaintiffs sustained serious personal injuries and related losses including mental anguish, physical

pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

## McKesson

575.    McKesson had a duty to accurately and truthfully represent to the medical community, state governments, and U.S. consumers, including Plaintiffs, the truth regarding its claims that the ZOSTAVAX vaccine had been tested and found to be safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

576.    McKesson represented and marketed ZOSTAVAX as being safe and effective for the long-term prevention of shingles and injuries and conditions associated with the herpes zoster virus.

577.    McKesson was aware of the risks of ZOSTAVAX.

578.    McKesson failed to communicate to the Plaintiffs, Plaintiffs' healthcare providers, and other members of the general public, that the administration of this vaccine increased the risk of viral infection.

579.    McKesson failed to communicate to the Plaintiffs, Plaintiffs' healthcare providers and other members of the general public, that the administration of the ZOSTAVAX vaccine would not remain effective past four years.

580.    McKesson failed to exercise ordinary care in making representations concerning its product and its design, marketing, promotion, distribution, and sale in interstate commerce.

581.    McKesson negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the product's unreasonable, dangerous and adverse side effects associated with the administration, use, and injection of the product.

582.    McKesson breached its duty in representing to the Plaintiffs, Plaintiffs' physicians and healthcare providers, and the medical community that the ZOSTAVAX vaccine did not carry the risk of serious side effects such as those suffered by Plaintiffs and other similarly situated patients.

583.    McKesson failed to warn the Plaintiffs and other consumers, of the defective condition of ZOSTAVAX, as packaged, labeled, promoted, marketed, distributed, and sold by McKesson.

584.    The misrepresentations made by McKesson, in fact, were false.

585.    McKesson was careless or negligent by failing to ascertain the truth of its representations at the time it made them.

586.    McKesson negligently misrepresented material facts about ZOSTAVAX: it in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

587.    Alternatively, McKesson made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

588.    The above misrepresentations were made to Plaintiffs, Plaintiffs' physicians and/or pharmacists, the medical community at the time Plaintiffs were prescribed ZOSTAVAX.

589.    Plaintiffs and Plaintiffs' healthcare providers, pharmacists and physicians, justifiably relied on McKesson's misrepresentations.

590.    Consequently, Plaintiffs' use of ZOSTAVAX was to Plaintiffs' own detriment.

591.    McKesson's negligent misrepresentations proximately caused Plaintiffs' injuries and monetary losses.

102

592.    As a foreseeable, direct, and proximate result of McKesson's negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, McKesson knew, or had reason to know, that the ZOSTAVAX vaccine had not been sufficiently tested, that the product lacked adequate, accurate, and prominent warnings, and that injection with the product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

593.    As a direct and proximate consequence of McKesson's negligent misrepresentations, Plaintiffs contracted a serious strain of herpes zoster virus, and sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**COUNT VIII:
UNJUST ENRICHMENT**

**Merck**

594.    Merck is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

595.    Plaintiffs paid for the ZOSTAVAX vaccine for the long-term prevention of shingles.

596.    Merck has accepted payment by Plaintiffs for the purchase of its product.

597.    Plaintiffs has not received the safe and effective vaccine for which Plaintiffs paid.

598.    It would be inequitable for Merck to keep this money if Plaintiffs did not in fact receive safe and effective treatment for the prevention of shingles.

103

## MSD

599.   MSD is and at all times was the manufacturer, seller, and/or supplier of the shingles vaccine, ZOSTAVAX.

600.   Plaintiffs paid for the ZOSTAVAX vaccine for the long-term prevention of shingles.

601.   MSD has accepted payments by Plaintiffs for the purchase of the ZOSTAVAX vaccine.

602.   Plaintiffs have not received the safe and effective vaccine for which Plaintiffs paid.

603.   It would be inequitable for MSD to keep this money if Plaintiffs did not in fact receive safe and effective treatment for the prevention of shingles.

## McKesson

604.   McKesson is and at all times was the marketer, promoter, packager, labeler, distributor, and seller of the ZOSTAVAX vaccine.

605.   Plaintiffs paid for the ZOSTAVAX vaccine for long-term prevention of shingles.

606.   McKesson has accepted payment by Plaintiffs for the purchase of the ZOSTAVAX vaccine(s).

607.   Plaintiffs have not received the safe and effective vaccine for which Plaintiffs paid.

608.   It would be inequitable for McKesson to keep this money if Plaintiffs did not in fact receive safe and effective treatment for the prevention of shingles.

## COUNT IX:
## CONSUMER FRAUD

609.   The ZOSTAVAX vaccine was and is intended for the long-term prevention of herpes zoster (or shingles) as manufactured, designed, licensed, processed, assembled, marketed, promoted, packaged, labeled, distributed, supplied, and/or sold by Defendants.

610.   At all relevant times, as set forth, Defendants, and each of them, engaged in the
business of researching, developing, testing, designing, setting specifications for, licensing,
manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing,
promoting, distributing, selling and/or introducing into interstate commerce the ZOSTAVAX
vaccine.

611.   Merck designed, researched, developed, manufactured, tested, labeled, advertised,
promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine.

612.   MSD designed, researched, developed, manufactured, tested, labeled, advertised,
promoted, marketed, sold, supplied, and/or distributed the ZOSTAVAX vaccine

613.   McKesson labeled, advertised, promoted, marketed, sold, supplied, and/or
distributed the ZOSTAVAX vaccine.

614.   Protection of Florida consumers is codified in the Florida Deceptive and Unfair
Trade Practices Act ("FDUTPA").

615.   Commercial behavior that constitutes "unconscionable acts or practices, and unfair
or deceptive acts or practices in the conduct of any trade or commerce" is unlawful pursuant to the
FDUTPA, and a consumer who suffered a loss as a result of this conduct may bring an action for
damages.

616.   At all relevant times, Merck, MSD, and McKesson engaged in continuous and
pointed commercial marketing activity and introduced the ZOSTAVAX vaccine heavily into the
stream of commerce within Florida and to Florida consumers.

617.   At all relevant times, Merck, MSD, and McKesson engaged in a distribution and
sales strategy within the state of Florida intending to reach Florida consumers, including Plaintiffs.

618. At all relevant times, the ZOSTAVAX vaccine's aggressive marketing campaign, containing advertising techniques that evaded divulging the known serious risks and warnings to consumers, including Plaintiffs, was unconscionable commercial behavior and is impermissible under FDUTPA.

### Merck

619. Merck's intentional misrepresentations, omissions, and concealment of material facts regarding the ZOSTAVAX vaccine constitutes unfair and deceptive conduct.

620. Since May 2006, on the date that ZOSTAVAX was approved by the FDA for commercial marketing in the United States, Merck widely disseminated the following material representations of material fact regarding the safety and efficacy of the ZOSTAVAX vaccine directly to consumers, including Plaintiffs, in its advertising and promotional campaign using television and radio commercials on broadcast television, cable television and other national media outlets; print advertisements run in magazines targeted, journals, and newspapers towards consumers and prescribers including national newspapers such as the New York Times, Washington Post, USA Today; posters and other signage in pharmacies where consumers bought their prescription drugs, including Plaintiffs' pharmacy; product handouts and brochures; its own website; and other ZOSTAVAX marketing materials:

      a.  That ZOSTAVAX did <u>not</u> cause or induce shingles.

      b.  That adult shingles causes pain in almost every instance.

      c.  That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it.

      d.  That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles.

      e.  That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies.

106

f. That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults.

g. That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

h. That ZOSTAVAX was a "well-studied vaccine."

i. That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

j. That ZOSTAVAX would benefit its users the *prevention of long-term nerve pain from shingles* (post-herpetic neuralgia) *can be primarily attributed to the vaccine's effect on the prevention of shingles*." (emphasis added).

k. That the efficacy of ZOSTAVAX is 51% for everyone.

l. That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

m. That the immunity provided by ZOSTAVAX was unlimited.

n. That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

o. That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

p. That ZOSTAVAX was safe.

q. That ZOSTAVAX was effective.

621. Each of these representations is false.

622. Merck knew or believed at the time it made the aforesaid representations that its representations regarding the efficacy of ZOSTAVAX, safety of ZOSTAVAX, the dangers and risks associated with use of the ZOSTAVAX vaccine, and the portrayal of the shingles condition and pain and ZOSTAVAX's role in treating or preventing same, were false, misleading, and deceiving.

623. Merck knew or believed at the time it made the aforesaid false representations about the ZOSTAVAX vaccine that the false representations were material.

624. Consumers, such as Plaintiffs, who saw or read the ZOSTAVAX vaccine's marketing materials do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is highly effective.

625. Consumers, such as Plaintiffs, who saw or read the ZOSTAVAX vaccine's commercial marketing materials relied upon the advertisements' representation that ZOSTAVAX was effective to prevent shingles and understood that representation to indicate that ZOSTAVAX would prevent shingles indefinitely.

626. Merck knew that the ZOSTAVAX vaccine's commercial marketing materials were false and misleading and would likely deceive any viewer into believing that ZOSTAVAX was safe and effective for its intended use.

627. Merck's representations intentionally concealed the following material information:

    a. From 2006 until present date, Merck intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

    b. From 2006 until present date, Merck intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

    c. From 2006 until present date, Merck intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

    d. From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, Merck knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

628. Merck had sole access to material facts concerning the ZOSTAVAX vaccine, its efficacy, and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

629. Merck's own research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine; the true risks of serious harm including viral infection, shingles

and shingles-related conditions, and other injuries associated with the use of the ZOSTAVAX vaccine; and the true efficacy of the ZOSTAVAX vaccine.

630.    Merck knew and had reason to know that the ZOSTAVAX vaccine was not effective for the long-term prevention of shingles and would not effective at all after four years post-inoculation.

631.    Merck intentionally misrepresented, omitted, and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce consumers such as Plaintiffs to rely upon Merck's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles and purchase the product to Merck's gain and to the consumers' detriment.

632.    At the time Merck concealed and intentionally omitted these material facts, and at the times that the Plaintiffs were administered the ZOSTAVAX vaccine, Plaintiffs were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

633.    Merck knew and had reason to know that consumers, including the Plaintiffs and Plaintiffs' physicians and healthcare providers that recommended, prescribed, purchased, administered, and/or otherwise used the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

634.    Plaintiffs would not have purchased and used the ZOSTAVAX vaccine if Plaintiffs knew the true facts regarding its safety and efficacy.

635.    Plaintiffs' physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

636.     Plaintiffs reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

637.     Because Plaintiffs reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

638.     Plaintiffs' physicians reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiffs for the long-term prevention of shingles and pain.

639.     Because Plaintiffs' physicians reasonably relied on Merck's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

640.     Merck's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, unfair conduct, deceptive conduct, and fraudulent conduct aimed towards consumers.

641.     As a direct and proximate consequence of Merck's unfair and deceptive acts and omissions, Plaintiffs sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

110

642. Plaintiffs' injuries and damages were directly and proximately caused by the unfair and deceptive commercial acts of Merck.

## MSD

643. MSD's intentional misrepresentations, omissions, and concealment of material facts regarding the ZOSTAVAX vaccine constitutes unfair and deceptive conduct.

644. Since May 2006, on the date that ZOSTAVAX was approved by the FDA for commercial marketing in the United States, MSD widely disseminated the following material representations of material fact regarding the safety and efficacy of the ZOSTAVAX vaccine directly to consumers, including Plaintiffs, in its advertising and promotional campaign using television and radio commercials on broadcast television, cable television and other national media outlets; print advertisements run in magazines targeted, journals, and newspapers towards consumers and prescribers including national newspapers such as the New York Times, Washington Post, USA Today; posters and other signage in pharmacies where consumers bought their prescription drugs, including Plaintiffs' pharmacy; product handouts and brochures; its own website; and other ZOSTAVAX marketing materials:

    a. That ZOSTAVAX did not cause or induce shingles.

    b. That adult shingles causes pain in almost every instance.

    c. That the ZOSTAVAX vaccine would effectively prevent shingles and specifically the pain that accompanied it.

    d. That the ZOSTAVAX vaccine was approved to treat the pain associated with shingles.

    e. That serious adverse effects were experienced by less than 1% of individuals in the ZOSTAVAX vaccine's clinical trials and studies.

    f. That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000 adults – and found to be safe, effective for the long-term prevention of shingles, and without any adverse effects in more than 20,000 adults.

    g. That "[t]here is no way to predict when the varicella-zoster virus (VZV) will reactivate or who will develop zoster."

h. That ZOSTAVAX was a "well-studied vaccine."

i. That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

j. That ZOSTAVAX would benefit its users *prevention of long-term nerve pain from shingles* (post-herpetic neuralgia) *can be primarily attributed to the vaccine's effect on the prevention of shingles*." (emphasis added).

k. That the efficacy of ZOSTAVAX is 51% for everyone.

l. That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

m. That the immunity provided by ZOSTAVAX was unlimited.

n. That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

o. That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

p. That ZOSTAVAX was safe.

q. That ZOSTAVAX was effective.

645.    Each of these representations is false.

646.    MSD knew or believed at the time it made the aforesaid representations that its representations regarding the efficacy of ZOSTAVAX, safety of ZOSTAVAX, the dangers and risks associated with use of the ZOSTAVAX vaccine, and the portrayal of the shingles condition and pain and ZOSTAVAX's role in treating or preventing same, were false, misleading, and deceiving.

647.    MSD knew or believed at the time it made the aforesaid false representations about the ZOSTAVAX vaccine that the false representations were material.

648.    Consumers, such as Plaintiffs, who saw or read the ZOSTAVAX vaccine's marketing materials do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is highly effective.

649.    Consumers, such as Plaintiffs, who saw or read the ZOSTAVAX vaccine's commercial marketing materials relied upon the advertisements' representation that ZOSTAVAX

112

was effective to prevent shingles and understood that representation to indicate that ZOSTAVAX would prevent shingles indefinitely.

650.   MSD knew that the ZOSTAVAX vaccine's commercial marketing materials were false and misleading and would likely deceive any viewer into believing that ZOSTAVAX was safe and effective for its intended use.

651.   MSD's representations intentionally concealed the following material information:

652.   From 2006 until present date, MSD intentionally concealed the effect of time since vaccination on ZOSTAVAX's efficacy.

653.   From 2006 until present date, MSD intentionally concealed that the effect of time since vaccination significantly decreases the efficacy rate of ZOSTAVAX.

654.   From 2006 until present date, MSD intentionally concealed the fact that four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

655.   From 2006, when the ZOSTAVAX vaccine was first marketed, until 2014, MSD knowingly omitted in the packaging for ZOSTAVAX that the ZOSTAVAX vaccine can actually cause a viral infection, leading to an array of other infections and/or diseases including post herpetic neuralgia.

656.   MSD had sole access to material facts concerning the ZOSTAVAX vaccine, its efficacy, and its propensity to cause serious and dangerous injuries and damages to persons who used the product.

657.   MSD's own research and testing of the ZOSTAVAX vaccine revealed the true safety of the ZOSTAVAX vaccine; the true risks of serious harm including viral infection, shingles and shingles-related conditions, and other injuries associated with the use of the ZOSTAVAX vaccine; and the true efficacy of the ZOSTAVAX vaccine.

658.    MSD knew and had reason to know that the ZOSTAVAX vaccine was not effective for the long-term prevention of shingles and would not effective at all after four years post-inoculation.

659.    MSD intentionally misrepresented, omitted, and/or concealed material facts concerning the safety and efficacy of the ZOSTAVAX vaccine to induce consumers such as Plaintiff to rely upon Merck's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles and purchase the product to Merck's gain and to the consumers' detriment.

660.    At the time MSD concealed and intentionally omitted these material facts, and in 2007 when the Plaintiff was administered the ZOSTAVAX vaccine, Plaintiffs was unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

661.    MSD knew and had reason to know that consumers, including the Plaintiffs and Plaintiffs' physicians and healthcare providers that recommended, prescribed, purchased, administered, and/or otherwise used the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

662.    Plaintiffs would not have purchased and used the ZOSTAVAX vaccine if Plaintiffs knew the true facts regarding its safety and efficacy.

663.    Plaintiffs' physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

664.    Plaintiffs reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

665.    Because Plaintiffs reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

666.    Plaintiffs' physicians reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiffs for the long-term prevention of shingles and pain.

667.    Because Plaintiffs' physicians reasonably relied on MSD's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

668.    MSD's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, unfair conduct, deceptive conduct, and fraudulent conduct aimed towards consumers.

669.    As a direct and proximate consequence of MSD's unfair and deceptive acts and omissions, Plaintiffs sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

115

670.    Plaintiffs' injuries and damages were directly and proximately caused by the unfair
and deceptive commercial acts of MSD.

**McKesson**

671.    McKesson's intentional misrepresentations of material facts regarding the
ZOSTAVAX vaccine constitutes unfair and deceptive conduct.

672.    Since May 2006, on the date that ZOSTAVAX was approved by the FDA for
commercial marketing in the United States, McKesson widely disseminated the following material
representations of material fact regarding the safety and efficacy of the ZOSTAVAX vaccine
directly to consumers, including Plaintiffs, in its advertising and promotional campaign using
television and radio commercials on broadcast television, cable television and other national media
outlets; print advertisements run in magazines targeted, journals, and newspapers towards
consumers and prescribers including national newspapers such as the New York Times,
Washington Post, USA Today; posters and other signage in pharmacies where consumers bought
their prescription drugs, including Plaintiff's pharmacy; product handouts and brochures; its own
website; materials provided to Florida's State Department of Health; materials provided to
insurance companies for dissemination to policyholders and consumers, including Plaintiffs; and
other ZOSTAVAX marketing materials:

> a. That the ZOSTAVAX vaccine would effectively prevent shingles and
> specifically the pain that accompanied it.
> b. That the ZOSTAVAX vaccine was approved to treat the pain associated with
> shingles.
> c. That the ZOSTAVAX vaccine was evaluated for safety in more than 20,000
> adults – and found to be safe, effective for the long-term prevention of shingles,
> and without any adverse effects in more than 20,000 adults.
> d. That "[t]here is no way to predict when the varicella-zoster virus (VZV) will
> reactivate or who will develop zoster."
> e. That ZOSTAVAX was a "well-studied vaccine."

f.  That ZOSTAVAX "significantly reduced" the risk of developing shingles compared with placebo."

g.  That ZOSTAVAX would benefit its users "in the *prevention of long-term nerve pain from shingles* (post-herpetic neuralgia) *can be primarily attributed to the vaccine's effect on the prevention of shingles*." (emphasis added).

h.  That the efficacy of ZOSTAVAX is 51% for everyone.

i.  That the efficacy of ZOSTAVAX did not diminish over time after vaccination.

j.  That the immunity provided by ZOSTAVAX was unlimited.

k.  That the immunity provided by ZOSTAVAX was the same regardless of the age of the patient vaccinated.

l.  That ZOSTAVAX had been tested and was found to be safe and effective for preventing shingles.

m.  That ZOSTAVAX was safe.

n.  That ZOSTAVAX was effective.

673.  Since 2006 and during all relevant times, McKesson made the aforesaid statements in Community Health Care brochures that it designed, created, published, and disseminated to the public and specifically targeted for the care of adults over the age of 60.

674.  Since 2006 and during all relevant times, McKesson made the aforesaid statements in Florida's Department of Health's Immunization Policies and Procedures that it designed, created, published, and disseminated to the public and its consumers, including Plaintiffs and Plaintiffs' healthcare providers.

675.  Each of these representations is false.

676.  McKesson knew or believed at the time it made the aforesaid representations that its representations regarding the efficacy of ZOSTAVAX, safety of ZOSTAVAX, the dangers and risks associated with use of the ZOSTAVAX vaccine, and the portrayal of the shingles condition and pain and ZOSTAVAX's role in treating or preventing same, were false, misleading, and deceiving.

117

677.    McKesson knew or believed at the time it made the aforesaid false representations
about the ZOSTAVAX vaccine that the false representations were material.

678.    Consumers, such as Plaintiffs, who saw or read the ZOSTAVAX vaccine's
marketing materials do not believe that the highest efficacy rate of 51% if vaccinated at age 60 is
highly effective.

679.    Consumers, such as Plaintiffs, who saw or read the ZOSTAVAX vaccine's
commercial marketing materials relied upon the advertisements' representation that ZOSTAVAX
was effective to prevent shingles and understood that representation to indicate that ZOSTAVAX
would prevent shingles indefinitely.

680.    McKesson knew that the ZOSTAVAX vaccine's commercial marketing materials
were false and misleading and would likely deceive any viewer into believing that ZOSTAVAX
was safe and effective for its intended use.

681.    McKesson's representations intentionally concealed the following material
information:

    a.  From 2006 until present date, McKesson intentionally concealed the effect of
        time since vaccination on ZOSTAVAX's efficacy.
    b.  From 2006 until present date, McKesson intentionally concealed that the effect
        of time since vaccination significantly decreases the efficacy rate of
        ZOSTAVAX.
    c.  From 2006 until present date, McKesson intentionally concealed the fact that
        four years after vaccination, the efficacy rate of ZOSTAVAX is zero.

682.    McKesson had sole access to material facts concerning the nature of ZOSTAVAX,
its efficacy, and its propensity to cause serious and dangerous injuries and damages to consumers
who used the product.

118

683.    McKesson, with Merck and MSD, had sole access to material facts concerning the

nature of ZOSTAVAX, its efficacy, and its propensity to cause serious and dangerous injuries and

damages to consumers who used the product.

684.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed

the true safety of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research

and testing of the ZOSTAVAX vaccine showing the true safety of the ZOSTAVAX vaccine.

685.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed

the true risks of serious harm associated with the use of the ZOSTAVAX vaccine.  McKesson

knew of the results of Merck's research and testing of the ZOSTAVAX vaccine showing the true

risks of the ZOSTAVAX vaccine.

686.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed

the true risks of it causing shingles and other injuries and conditions associated with the herpes

zoster virus. McKesson knew of the results of Merck's research and testing of the ZOSTAVAX

vaccine showing that it carried a real and serious risk of causing shingles and other injuries and

conditions associated with the herpes zoster virus.

687.    Merck's and/or MSD's research and testing of the ZOSTAVAX vaccine revealed

the true efficacy of the ZOSTAVAX vaccine. McKesson knew of the results of Merck's research

and testing of the ZOSTAVAX vaccine showing the true efficacy of the ZOSTAVAX vaccine.

688.    McKesson knew and had reason to know that the ZOSTAVAX vaccine was not

effective for the long-term prevention of shingles and would not effective at all after four years

post-inoculation.

689.    McKesson intentionally misrepresented, omitted, and/or concealed material facts

concerning the safety and efficacy of the ZOSTAVAX vaccine to induce consumers such as

119

Plaintiffs to rely upon Merck's misrepresentations and use the ZOSTAVAX vaccine as a safe vaccine for the long-term prevention of shingles and purchase the product to Merck's gain and to the consumers' detriment.

690.    At the time McKesson concealed and intentionally omitted these material facts, and when the Plaintiffs were each administered the ZOSTAVAX vaccine, Plaintiffs were unaware of the material facts regarding the true safety and efficacy of ZOSTAVAX, and reasonably believed that ZOSTAVAX was safe and effective for the long-term prevention of shingles.

691.    McKesson knew and had reason to know that consumers, including the Plaintiffs and Plaintiffs' physicians and healthcare providers that recommended, prescribed, purchased, administered, and/or otherwise used the ZOSTAVAX vaccine, did not have the ability to determine the true facts regarding the ZOSTAVAX vaccine's safety and efficacy that it intentionally concealed.

692.    Plaintiffs would not have purchased and used the ZOSTAVAX vaccine if Plaintiffs knew the true facts regarding its safety and efficacy.

693.    Plaintiffs' physicians would not have recommended, prescribed, purchased, and/or administered the ZOSTAVAX vaccine if they knew the true facts regarding its safety and efficacy.

694.    Plaintiffs reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and was induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain.

695.    Because Plaintiffs reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

120

696.    Plaintiffs' physicians reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to recommend, prescribe, purchase, and/or administer the ZOSTAVAX vaccine to Plaintiffs for the long-term prevention of shingles and pain.

697.    Because Plaintiffs' physicians reasonably relied on McKesson's misrepresentations regarding the safety and efficacy of the ZOSTAVAX vaccine and were induced to purchase and use the ZOSTAVAX vaccine for the long-term prevention of shingles and pain, Plaintiffs sustained severe and permanent personal injuries and damages.

698.    McKesson's false representations and intentional omissions and concealment of material facts regarding the safety and efficacy of ZOSTAVAX constitute wrongful conduct, unfair conduct, deceptive conduct, and fraudulent conduct aimed towards consumers.

699.    As a direct and proximate consequence of McKesson's unfair and deceptive acts and omissions, Plaintiffs sustained serious personal injuries including physical pain and suffering, mental anguish, diminished capacity for the enjoyment of life, diminished quality of life, medical and related expenses, and other losses and damages.

700.    Plaintiffs' injuries and damages were directly and proximately caused by the unfair and deceptive commercial acts of McKesson.

**COUNT X:**
**PUNITIVE DAMAGES**

701.    Merck and MSD have been repeatedly admonished by the FDA about the manner in which it has marketed ZOSTAVAX to consumers and physicians.

702.    McKesson has been aware of the FDA's repeated admonishments of Merck's marketing of ZOSTAVAX.

121

703. McKesson continued to market ZOSTAVAX in the same manner despite this knowledge.

704. Merck, MSD, and McKesson, each of them, have repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which warnings relating to public hazards should be included in materials.

705. Merck, MSD, and McKesson each has repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to which warnings relating to public hazards should be included in materials. Defendants have engaged in other similar incidents with other drugs it sells and this evidence tends to show that overstating the benefits of a drug while minimizing the risk of the drug is a pattern and practice of Defendants, which continues even to the present time.

706. Merck, MSD, and McKesson, each of them, has engaged in other similar incidents with other drugs it designs, markets, and sells; this evidence tends to show that overstating the benefits of a drug while minimizing the risk of the drug is a pattern and practice of Merck, MSD, and McKesson, each of them, which continues even to the present time.

707. Merck's, MSD's, and McKesson's acts were willful and malicious in that each Defendant's conduct was carried on with a conscious disregard for the safety and rights of the public, consumers, and Plaintiffs.

708. Merck's, MSD's, and McKesson's unconscionable conduct thereby warrant an assessment of exemplary and punitive damages against Defendants in an amount appropriate to punish Defendants, and deter similar conduct in the future.

775. Punitive damages are appropriate under Florida law.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, as follows:

a.  For general damages in an amount to be proven at the time of trial;

b.  For special damages in an amount to be proven at the time of trial;

c.  For statutory damages as set forth above, in an amount to be proven at the time of trial;

d.  For exemplary and punitive damages in an amount to be proven at the time of trial, and sufficient to punish Defendant or to deter Defendant and others from repeating the injurious conduct alleged herein;

e.  For pre-judgment and post-judgment interest on the above general and special damages;

f.  For costs of this suit and attorneys' fees; and

g.  All other relief that this Court deems necessary, proper, and just.

**WHEREFORE**, Plaintiffs demand judgment against Merck, MSD, and McKesson, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

Dated: June 1, 2018

Respectfully submitted,

MARC J. BERN & PARTNERS LLP

By: /s/ Carmen A. De Gisi
CARMEN A. De GISI, ESQ.
Florida Bar No: 97303
101 West Elm Street, Suite 215
Conshohocken, Pennsylvania
Tel: (610) 941-4444
Fax: (610) 941-9880
Primary E-Mail. cdegisi@bernllp.com
*Attorneys for Plaintiff*